CORNELIUS C. MOORE *vs.* FREDERICK M. LANGTON, *Tax Administrator.*

JANUARY 23, 1961.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

FROST, J. This is an amended petition for a declaratory judgment under G. L. 1956, chap. 9-30. The superior court certified the petition to this court because of certain questions of doubt and importance, as provided by G. L. 1956, §9-24-27.

The petitioner states that he is a resident of the city of Newport in this state and that he brings his petition against Frederick M. Langton individually and in his capacity as tax administrator and Louis T. Cote in the capacity in which he is now serving as tax administrator as the successor in office to the respondent.

The petitioner avers that two certain acts, namely, chaps. 52 and 179 of P. L. 1960, approved May 2 and 13, respectively, which provide for a tax upon intangible personal property to be assessed and collected by the state, are in-

valid. For this averment of invalidity he alleges several reasons, among others, that said chap. 52 was not passed in accordance with the provisions of the constitution of this state; that chaps. 52 and 179 purport to assess the first direct intangible personal property tax by the state since the adoption of the state constitution without taking a new estimate of intangible personal property as required by article IV, sec. 15, of the constitution; and that since chaps. 52 and 179 are invalid and unconstitutional their enforcement will damage petitioner's intangible personal property. He further avers that certain important and substantial constitutional questions ought to be determined promptly so that corrective legislation may be considered in order to avoid the possibility of extensive loss of revenue to the state or the city of Newport.

The petitioner prays that such questions be certified to this court and that this court may declare said chaps. 52 and 179 invalid, null and void and of no force or effect. After a hearing before a justice of the superior court an order of certification approved by the presiding justice of that court was duly entered.

The order states that the court makes certain findings of fact, among which are the following: "The evidence establishes that the General Assembly, said State of Rhode Island, prior to Chapters 52 and 179, Public Laws of Rhode Island, 1960, did not provide for the making of a new valuation of intangible personal property, for the assessment of taxes, as the petitioner claims is required by Article IV, Section 15, Constitution of the State of Rhode Island and Providence Plantations."

It then states fifteen questions for determination by this court. The first two, which will be considered together, read as follows:

"1. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article IV, Section 6, Constitution of the State

of Rhode Island and Providence Plantations, as a bill passed by the House of Representatives of the General Assembly, said State of Rhode Island, by the action of less than a quorum of the members of said House?

"2. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article IV, Sec. 6, Constitution of the State of Rhode Island and Providence Plantations, as a bill passed by said House without a quorum of said House being present?"

The pertinent portion of sec. 6, art. IV, of the state constitution is as follows: "Each house shall be the judge of the elections and qualifications of its members; and a majority shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may compel the attendance of absent members in such manner, and under such penalties, as may be prescribed by such house or by law." From this section it is clear that a quorum is a majority of the members of the house and art. XIII of amendments to the constitution provides that the house of representatives shall never exceed one hundred members.

The contention of the petitioner is that chap. 52 was not passed in the presence of a quorum of the house. In a consideration of this question we will confine ourselves to the journal of the house and to public records. See *Opinion to the House of Representatives,* 45 R. I. 289, 294.

The roll of members of the house of representatives on January 6, 1959, the opening of the general assembly, shows 100 members. R. I. Acts & Resolves 1959, p. 1036. On April 28, 1960, the day following April 27 when chap. 52 was allegedly passed, there was a roll call on another act wherein the journal shows ayes 44, noes 25, and absent or not voting 31. The total of members voting and not voting was 100.

It is reasonable to assume from the number of members on opening day and on April 28, 1960 that on April 27, 1960 the house consisted of 100 members. A quorum there-

fore on April 27, 1960 was 51 members. The journal for April 27, 1960 shows a division vote on H 1278 (now chap. 52) of 29 members voting in the affirmative and 12 members voting in the negative. It does not show any members absent or not voting or excused from voting.

Rule 25 of the house adopted on January 6, 1959, Acts & Resolves, pages 966 and 971, reads as follows: "No member shall speak or vote unless within the bar of the house. Every member (except as provided in rule 6) who shall be in the house when the question is put shall give his vote, unless prior thereto the house for special reasons shall excuse him." Rule 6 refers only to the speaker.

In *Curvin for an Opinion,* 58 R. I. 51, at page 54, we said, "Generally, no business of any kind can legally be performed by any number less than a majority, except to adjourn or compel the attendance of absent members. In other words, majority rule is firmly imbedded in our fundamental law and governs the house of representatives."

In 1 Cooley, Constitutional Limitations (8th ed.), page 277, it is stated: "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take judicial notice. If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow any requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence, and adjudge the statute void." A quorum is required to do business. Rhode Island Constitution, art. IV, sec. 6.

The respondent contends that since the journal shows a quorum present on the opening of the sessions on April 27, the presumption is that it continued throughout the day since no one called the attention of the speaker to the fact that there was no quorum.

We are of the opinion that such presumption continued until the vote taken on a bill showed that there was no

quorum. In *State ex rel. Stanford* v. *Ellington,* 117 N. C.
158, Stanford contended that he was elected state librarian.
It appeared that the defendant was elected librarian on
January 8, 1895 by the trustees; and that on March 13,
1895 an act was passed providing for the election of a libra-
rian by the legislature. On the same day they proceeded
to elect a librarian. The vote in the senate was 25 for and
one against the plaintiff. In the house 48 votes were cast, all
for the plaintiff. The legislature was composed of 170 mem-
bers, 50 being in the senate and 120 in the house. Therefore
the number voting on March 13 in the senate was a major-
ity and quorum. In the house a majority and quorum was
61 members. Hence when the plaintiff was allegedly elected
the house lacked a quorum. The plaintiff contended that
since on the opening of the session a quorum was present
and since it did not appear that there had been an adjourn-
ment it would be presumed that there continued to be a
quorum. As to that contention the court said at page 162:
"But when the roll was called, the name of each member
voting recorded, and the tellers appointed report the num-
ber voting for plaintiff and the number voting against him
—a modern division—we have the facts and they must
prevail over the presumption which existed in favor of a
quorum before that time." There was judgment for the
defendant.

*Judicial Opinion.* 35 N. H. 579. This was an opinion to
the governor in reply to a question as to the validity of a
law. The members of the court stated at page 579, referring
to the law: "It has been published by authority as one of
the public statutes enacted at that session. This, we have
no doubt, must be regarded as prima facie evidence that it
received the assent of the two branches of the Legislature,
and the Governor, in the manner required by the constitu-
tion to make it a valid law and statute of the state. Is this
evidence to be considered as conclusive, and incapable of
contradiction?" And on page 581, referring to the journals

of the house and senate, the court further stated: "But we think they are to be treated as authentic records of the proceedings, and that we may resort to them in this case to ascertain whether the two Houses in fact concurred in the passage of the before mentioned act; that if it appears by the journals that they did not, the prima facie evidence derived from an examination of the act itself will be overcome." The justices found the act was not legally valid and binding as a law and statute of the state.

*Spangler* v. *Jacoby,* 14 Ill. 297, was a case involving the validity of a statute. At page 299 the court stated: "A majority of all the members elected to either branch of the general assembly, must concur in the final passage of a bill. This is indispensable to its becoming a law. Without it, the act has no more force than the paper upon which it is written. The vote must be taken by ayes and noes. The constitution prescribes this as the test, by which to determine whether the requisite number of members vote in the affirmative. The vote must also be entered on the journal. The office of the journal is to record the proceedings of the house, and authenticate and preserve the same. It must appear on the face of the journal, that the bill passed by a constitutional majority. These directions are all clearly imperative. They are expressly enjoined by the fundamental law, and cannot be dispensed with by the legislature. * * * The printed statute book is evidence of the acts contained therein. * * * In our opinion, it is clearly competent to show from the journals of either branch of the legislature, that a particular act was not passed in the mode prescribed * * * and * * * the act must stand or fall."

The journal of the house shows with transparent clearness that in purporting to pass H 1278, now chap. 52, there was a failure to comply with art. IV, sec. 6, of the state constitution in that the bill was passed without a quorum being present.

We are constrained to answer questions 1 and 2 in the affirmative.

Questions 3 and 14 will be discussed together. They are as follows:

"3. Is Chapter 52, Public Laws of Rhode Island (1960), unconstitutional in that it violates Article IV, Sec. 15, Constitution of the State of Rhode Island and Providence Plantations, for the reason that it is the first direct State tax upon intangible personal property assessed without taking a new estimate of intangible personal property after the adoption of the Constitution of the State of Rhode Island and Providence Plantations?

"14. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates the provisions of Article IV, Section 15, Constitution of the State of Rhode Island and Providence Plantations, for the reason that said Chapter 52 imposes a tax upon intangible personal property prior to a valuation of intangible personal property?"

Article IV, sec. 15, reads as follows: "The general assembly shall, from time to time, provide for making new valuations of property, for the assessment of taxes, in such manner as they may deem best. A new estimate of such property shall be taken before the first direct state tax, after the adoption of this constitution, shall be assessed."

The question, simply stated, which arises from these two questions is: Is chap. 52, as amended, unconstitutional by reason of the fact that it is the first direct state tax on intangible personal property to be assessed without providing for an estimate of the valuation of such property since the adoption of the present state constitution?

It does not appear that the trial justice has made any finding as to whether chap. 52, as amended, is the first direct tax upon intangible property assessed by the state since the present constitution was adopted, but we understand that both petitioner and respondent concede that it is not the first such tax. The trial justice did make a find-

ing, which appears in the order of certification, that such chapter did not provide either for a new estimate of valuation as required by art. IV, sec. 15, of the state constitution.

The petitioner asserts that chap. 52, as amended, is the first direct state tax on intangible personal property without provision for such an estimate as required by the constitution.

The respondent on the other hand contends that such estimate is not required but if required can still be provided for and that therefore said chap. 52 is not unconstitutional.

The words of art. IV, sec. 15, of the state constitution are not without meaning. They are mandatory as to the making of new valuations of property but do not specify when or how often they are to be made as is the case in some jurisdictions.

Since the provision in said chap. 52 is for a direct tax by the state upon the individual, which is a marked change from the present law whereby the municipality assessed a tax on the intangible personal property of the individual, it would appear to be mandatory before levying the tax to make an estimate of the valuation of the intangible property subject to tax.

If this is not one of the times referred to in sec. 15, it is difficult to suggest one. We are, therefore, of the opinion that said sec. 15 is a constitutional requirement which compels the making of an estimate of the valuation of the intangible property taxable within the state. The general assembly has provided for estimates and they have been taken heretofore. That alone would suggest the necessity for taking the same care with reference to chap. 52. The reason for the requirement found in sec. 15 is that it is essential in taxation that some reasonable knowledge of the amount of such property be had to determine the proper rate. Otherwise a given rate might produce too little, which would be bad, or too much which would be even more disastrous since the latter would violate a cardinal principle of

taxation that taxes may not be levied beyond the needs of government. 84 C.J.S., Taxation, §352(3), p. 685. In the case of intangible personal property it is particularly necessary that the general assembly provide for an estimate of the valuation. An individual's real estate and his personal estate, to a less degree, are reasonably obvious and capable of estimation by the taxing authorities but it is not so with intangible personal property which is not discernible to the taxing authorities without aid from the owner.

If individuals are to be taxed on a basis of equality on their intangible property, the government must provide for the appraisal and estimation of such property prior to levying upon it. See *In Re Opinion of the Justices,* 195 Mass. 607. Since there has been no estimate of the valuation of intangible personal property and no provision for such in chap. 52, as amended, we are of the opinion that questions 3 and 14 should be answered in the affirmative.

Question 4 is as follows:

> "4. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates the provisions of Article IV, Section 14, Constitution of the State of Rhode Island and Providence Plantations, as a bill appropriating the public money for local purposes without the assent of two thirds of the members elected to each house of the general assembly?"

Chapter 52, as amended, provides that the tax on intangible personal property shall be collected by the state and placed in its treasury. From the treasury at least 40 per cent is returned to the towns and cities. To take the money from the treasury of the state requires an appropriation, but since such an appropriation is to all the towns and cities and is state wide it can hardly be termed an appropriation for local purposes in the sense that it is made to some municipalities and not to others, or to a small area of the state as against the entire state.

Presumably once the money gets into the treasury of a town or city it is appropriated by town or city officials for the expenses of such town or city. However, appropriations from the treasuries of the towns and cities must be made under the same restrictions and within the same limitations as exist at the time such appropriations are made.

Section 14 of art. IV of the state constitution was designed to safeguard the appropriation of public money for local or private purposes, which purposes were not governmental purposes or, if they were, were not for the benefit of the people of the state generally.

In view of our position that chap. 52, as amended, is not a bill appropriating public money for local purposes it was not essential that it be passed by two thirds of the members in each house.

We are of the opinion that question 4 should be answered in the negative.

Questions 5 and 6 will be considered together. They are as follows:

"5. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article IV, Section 1, Constitution of the State of Rhode Island and Providence Plantations, for the reason that Sections 5, 7, 8, 10 and 11 of said Chapter 52, delegate legislative authority to the Tax Administrator, said State of Rhode Island?

"6. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article IV, Section 1, Constitution of the State of Rhode Island and Providence Plantations, for the reason that Sections 5, 7, 8, 10 and 11 of said Chapter 52 constitute delegations of legislative authority without confining said delegations within expressly defined channels?"

The authority of the general assembly to pass all laws necessary to carry the constitution into effect is recognized. The only question raised is whether the general assembly

has delegated any of its authority improperly and without necessary limitations.

Section 5 of chap. 52, as amended, authorizes the tax administrator to furnish forms to be filled out by the taxpayer on or before May 15 following the date of assessment. We cannot assume that the tax administrator will require more than he is instructed to require by the law itself.

Section 7 fixes the time within which the tax administrator may require the taxpayer to produce his records which support the valuation which he has placed upon his property. The taxpayer is also required to furnish such other information as the tax administrator deems necessary to determine accurately the amount of the tax due. The law limits the tax administrator in what he may require of the taxpayer as to what may be necessary to determine accurately the amount of the tax which may be due. Again, we cannot assume that the tax administrator will require anything beyond the limits imposed upon him by the law.

Section 10 fixes the time following the assessment within which the tax administrator may assess and collect the tax when the return is not proper or correct. It is necessary for someone to decide whether a return is correct. Up to this point we see no improper delegation of authority.

The latter part of sec. 11, after notice to the taxpayer of the amount of the assessment, contains this language: "Any taxpayer aggrieved by the determination may request a hearing and the tax administrator may make such adjustment of the tax as he may deem proper."

Apparently the tax administrator without restriction may, for instance, reduce a tax of $5,000 to $1,000. In other words, he may cause the law to be one thing for A and another thing for B. It is not what such an official would do but what he could legally do under the act as it is written. While the case of Bennett v. Davis, 90 Me. 102, is not in point here, the court in that case did use certain language with respect to a statute which is quite appropriate. At

page 105 the court said: "It is not what has been done, or ordinarily would be done under a statute, but what might be done under it that determines whether it infringes upon the constitutional right of the citizen." Such wide and unrestricted authority is equivalent to giving the tax administrator the authority to write his own law for each individual case. See *State* v. *Copeland*, 3 R. I. 33. Such authority is contrary to the constitution which states in art. IV, sec. 1: "This constitution shall be the supreme law of the state, and any law inconsistent therewith shall be void. The general assembly shall pass all laws necessary to carry this constitution into effect."

This unwarranted delegation of authority in sec. 11, as in our opinion it is, constrains us to answer questions 5 and 6 in the affirmative in so far as that section is concerned.

Questions 7 and 8 will be considered together. They are as follows:

"7. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article 1, Section 5, Constitution of the State of Rhode Island and Providence Plantations, as a statute which fails to prescribe a certain remedy by having recourse to the laws prior to the final determination of the amount of the tax purportedly imposed by said Chapter?

"8. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Amendment 14, Section 1, Constitution of the United States, as a statute of the State of Rhode Island which abridges the privileges or immunities of the citizens of the United States or deprives Petitioner of property without due process of law, for the reason that said Chapter 52, as Amended, fails to prescribe a certain remedy by recourse to the laws prior to the final determination of the amount of the tax purportedly imposed?"

These questions make it necessary to decide whether chap. 52, as amended, fails to provide a certain remedy for any wrong that petitioner may suffer in respect to his in-

tangible personal property by reason of the tax assessed upon it and, in addition, whether there is such a failure to provide a legal remedy for such possible wrong that it can be said that there is a lack of due process under sec. 1 of the 14th amendment to the constitution of the United States.

Under chap. 52, as amended, the assessment of the taxpayer's intangible property occurs on December 31 in each year at 12 o'clock noon (sec. 4). On or before May 15 of the year following the assessment the taxpayer is required to file a return showing the full and fair cash value of all of his intangible personal property and at the same time pay the full amount of the tax upon such property (sec. 5). As in the case of any tax generally, he may pay under protest and later sue to recover the whole or a portion of the amount paid.

In the event that the taxpayer does not file a return or files an improper or incorrect return, the tax administrator within six years of the date of assessment may assess and collect the tax deemed to be due (sec. 10) and within two months after notice of the assessment any taxpayer aggrieved by the determination of the tax administrator may request a hearing (sec. 11). A taxpayer aggrieved by the determination of the tax administrator as to the amount of the tax, provided he pays his tax, may within three months of the notification of the determination of the tax, petition the superior court for relief from the assessment (sec. 12).

*Perce* v. *Hallett,* 13 R. I. 363, was a case which came to the supreme court from the court of common pleas where the action was dismissed for nonpayment of the entry fee prescribed by statute. The plaintiff contended in this court that the statute was void for repugnance to sec. 5 of art. I of the state constitution. Chief Justice Durfee stated that the provision in the constitution was borrowed from Magna Charta and was generally supposed by jurists in England not to prohibit such fees; that the better opinion was "that it was designed to abolish, not fixed fees, prescribed for the

purposes of revenue, but the fines which were anciently paid to expedite or delay law proceedings and procure favor." See also *Joslin Mfg. Co.* v. *Clarke,* 41 R. I. 350, 356, and *Narragansett Electric Lighting Co.* v. *Sabre,* 50 R. I. 288, 297.

As to the requirement that the tax be paid before a petition may be filed in the superior court, we are of the opinion that that is not objectionable and is a usual requirement in tax law. As between the government and the individual, the fiscal needs of the government must be preferred; otherwise there is no protection for the individual.

The petitioner to support his position cites the case of *Bennett* v. *Davis,* 90 Me. 102. While we do not question the court's decision we are of the opinion that the situation in that case is not sufficiently like the one before us to make the case of value on this point.

In 51 Am. Jur., Taxation, §1183, p. 1015, it is stated: "One who denies the legality of a tax should have a clear and certain remedy, and since, apart from certain circumstances, he cannot interfere by injunction with the state's collection of its revenues, an action at law to recover back what he has paid is the alternative left."

With respect to petitioner's contention that chap. 52, as amended, deprives him of his property without due process of law, in *Manning* v. *Board of Tax Commissioners,* 46 R. I. 400, at page 414, we approved a statement from *Palmer* v. *McMahon,* 133 U. S. 660, 669, which is as follows: "The power to tax belongs exclusively to the legislative branch of the government, and when the law provides for a mode of confirming or contesting the charge imposed, with such notice to the person as is appropriate to the nature of the case, the assessment cannot be said to deprive the owner of his property without due process of law. * * * The imposition of taxes is in its nature administrative and not judicial, but assessors exercise quasi judicial powers in arriving at the value, and opportunity to be heard should be and is

given under all just systems of taxation according to value. It is enough, however, if the law provides for a board of revision authorized to hear complaints respecting the justice of the assessment, and prescribes the time during which and the place where such complaints may be made. *Hagar* v. *Reclamation District*, 111 U. S. 701, 710."

In the case of the instant law the hearing provided for is before a single person, the tax administrator who made the determination as to the amount of tax, rather than before a board of several persons. But this provision does not affect the constitutionality of this portion of the law, since the act provides for a judicial review by the superior court. See also *Allen* v. *Bonded Municipal Corp.*, 62 R. I. 101, and *McTwiggan* v. *Hunter*, 19 R. I. 265.

Having in mind the principles of law referred to, it is our opinion that it cannot rightly be said that the law in question affords no remedy to the taxpayer for any possible injustice to him nor can it be said that the said chapter is unconstitutional because of lack of due process.

We answer Questions 7 and 8 in the negative.

Question 9 is as follows:

"9. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Amendment 14, Section 1, Constitution of the United States, as a denial of due process of law in that it fails to define with definiteness;

"(a) the persons required to file tax returns and to pay the tax purportedly imposed, and

"(b) the property, the value of which is subject to the property tax, and, the property, the value of which is exempt from the tax?"

The petitioner asserts that chap. 52, as amended, is a denial of due process because it fails to define with definiteness the persons to whom and the property to which the law applies and also the property which is exempt. The petitioner cites 82 C.J.S., Statutes, §68, which states in part, "Reasonable definiteness and certainty is required in stat-

utes and reasonable certainty is sufficient." We are in accord with this statement. See also 51 Am. Jur., Taxation, §303.

Indefiniteness is asserted as to the persons affected by the law and also the property subject to it. Chapter 52, as amended, imposes a tax on all intangible personal property belonging to any individual, partnership, fiduciary or corporation except that which is exempt from taxation by the laws of the United States or of this state (secs. 2 and 26). Intangible personal property subject to the tax is defined (sec. 3). The rate of taxation is defined (sec. 4). The persons who are exempt are stated (sec. 16). Certain organizations which are not to be taxed on intangible personal property are stated (sec. 23).

Questions will undoubtedly arise as to the taxability of certain persons and items of intangible personal property as is perhaps always the case with tax laws, but after a careful study of the law we are of the opinion that there is no such lack of definiteness and certainty as to persons and property which would allow us to say that the requirements of due process have not been reasonably met.

We answer question 9 in the negative.

Questions 10 and 11 are as follows:

"10. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article 1, Section 12, Constitution of the State of Rhode Island and Providence Plantations, for the reason that said Chapter 52, as amended, impairs the obligations of petitioner's contracts in that property which is exempt, as property liable to the taxation by the said State of Rhode Island cannot be determined on or before the time and date of assessment?

"11. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article 1, Section 10, Constitution of the United States, for the reason that said Chapter, as amended, impairs the obligations of petitioner's contracts in that property which is exempt, as property liable to the taxation by the said State of Rhode Island cannot be

determined on or before the time and date of assessment but can be determined only subsequent to the time and date of assessment?"

The pertinent portion of sec. 12 of art. I of the constitution of Rhode Island is: "No *ex post facto* law, or law impairing the obligation of contracts, shall be passed" and sec. 10 of art. I of the constitution of the United States is: "No state shall * * * pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts * * *."

In the eighth reason of paragraph eleven of the amended petition petitioner alleges, "Said *Chapter 52* and said *Chapter 179,* impairs the obligation of petitioner's contracts in that the property which is exempt by the provisions of said chapters cannot be determined on or before the time and date of assessment but can be determined only subsequent to the time and date of assessment, in violation of Art. I, Section 12, Constitution of the State of Rhode Island and Providence Plantations and Article I, Section 10, Constitution of the United States."

The petitioner argues that the vice inherent in said chap. 52, as amended, arises from the failure of the legislature to coordinate the date of assessment of property subject to the tax with the date for determination of the property which is or is not subject to the tax.

As respondent points out, said chap. 52 does not impose a new tax and petitioner's property was subject to the same tax previously under G. L. 1956, Title 44.

In *Murray* v. *Charleston,* 96 U. S. 432, cited by petitioner. it appeared that prior to January 1, 1870 the plaintiff was a holder of what was called stock of the city of Charleston. By ordinances of March 20, 1870 and March 21, 1871 a tax of two cents on the dollar was imposed upon all real and personal property in the city of Charleston. The ordinance also required that the tax assessed should be retained by the city treasurer out of the interest due on the city stock. Suit was brought to recover the amount of interest retained

by the city treasurer. There was judgment for the defendant. This decision was reversed by the Supreme Court of the United States on the ground that the ordinance impaired the obligation of the contract between the plaintiff and the defendant.

We, of course, do not know what petitioner's intangible property consists of. We do not even know whether there is any item of intangible personal property concerning which the question of impairment of the obligation of contract could arise.

Section 2 of chap. 52, as amended, imposes a tax upon all intangible personal property "except that which is exempt from taxation by the laws of the United States or of this state * * *." We cannot assume that any law passed by the legislature is contrary to the constitution of this state or the constitution of the United States. We are bound to resolve every reasonable intendment in favor of its constitutionality. *State* v. *Scofield*, 87 R. I. 78, 82, 138 A.2d 415, 417; *State* v. *Domanski*, 57 R. I. 500, 505.

We answer questions 10 and 11 in the negative.

Question 12 is as follows:

> "12. Is Chapter 52, Public Laws of Rhode Island (1960), as Amended, unconstitutional in that it violates Article 1, Section 6, Constitution of the State of Rhode Island and Providence Plantations, for the reason that Sections 7 and 9 of said Chapter 52 violate the right of the petitioner to be secure in his papers and possessions against unreasonable search and seizures, and without the issuance of a warrant?"

Section 7 of chap. 52, as amended, states that the tax administrator may require the taxpayer to produce for his inspection certain written evidence used by the taxpayer in computing his tax and to furnish such other information as the tax administrator deems necessary to determine accurately the amount of the tax due.

Section 9 states that the tax administrator, in the event that the taxpayer refuses to comply with what may be re-

quired of him by sec. 7, may apply to the superior court for an order to compel such compliance.

The act could amount to little if the taxpayer was not required to exhibit the evidence showing how he arrived at the amount of tax considered by him to be due, and again the law could amount to nothing if upon refusal by the taxpayer to accede to the request of the tax administrator to bring in his papers such papers could not be obtained. It cannot be assumed that a justice of the superior court would issue an order of search and seizure of a taxpayer's papers without clear basis for so doing, and in this case the law (sec. 9) allows the court to issue a search warrant only after notice and an opportunity for hearing. Our understanding of notice is notice to the taxpayer.

The constitutional provision is a protection against only unreasonable searches and seizures and as we read chap. 52, as amended, it provides only for reasonable searches and seizures.

We answer question 12 in the negative.

Question 13 is as follows:

"13. Is Chapter 52, Public Laws of Rhode Island (1960), repealed by Chapter 179, Public Laws of Rhode Island (1960), and is said Chapter 179, Public Laws of Rhode Island (1960) repealed by said Chapter 52, Public Laws of Rhode Island (1960)?"

Since we have herein held chap. 52 to be a nullity there is nothing for chap. 179 to operate upon by way of amendment and therefore this question requires no answer.

Question 15 is as follows:

"15. May the Superior Court enter a declaratory judgment relative to the constitutionality of Chapters 52 and 179, Public Laws of Rhode Island (1960), which said Chapters take effect December 1, 1960, upon the petition filed before December 1, 1960, by the petitioner, Cornelius C. Moore, a domiciled resident of the City of Newport, County of Newport, said State of Rhode Island, and who, on the date of filing of the petition was the owner of intangible personal property."

· Said chaps. 52 and 179 approved May 2 and May 13, 1960, respectively, became effective in each case on December 1, 1960. The original petition for a declaratory judgment was filed on June 2, 1960 and the order of certification to this court was entered on October 14, 1960.

The fact that the petition was filed before either chap. 52 or chap. 179 became effective caused the respondent to file in the superior court a motion to dismiss on the ground that the petition was moot. The motion was denied and question 15 was inserted in the order of certification to this court.

On reason we are of the opinion that there is nothing to prevent a court from considering the constitutionality of a statute after its enactment and before the date it takes effect. Since most laws which are passed affect many people it would seem desirable, if there is a question of constitutionality of the act of the legislature, that such question be determined as soon as possible after the enactment of the act. Not only does this appear reasonable but authorities so hold.

In 2 Anderson, Declaratory Judgments (2d ed.) §621, p. 1414, the author states: "It has long been settled that courts have jurisdiction under the declaratory judgment act to determine the validity or construction of a statute or ordinance before a party undertakes to act in apparent violation thereof. That is the purpose and intent of the beneficient, remedial relief contemplated by the declaratory judgment statute. Indeed it is unnecessary for the assailed statute to have taken effect in order to entitle one whose rights it affects to contest the same by declaratory action. However, it is well settled that the court will not entertain a declaratory action with respect to the effect and validity of a statute in advance of its enactment."

· In *Pierce* v. *Society of Sisters,* 268 U. S. 510, which was an appeal from a decree of a district court granting an injunction restraining officials of the state of Oregon from attempt-

164

ing to enforce an amendment to the school law, the court said in answer to the argument that the suit was premature, "The suits were not premature. The injury to appellees was present and very real, not a mere possibility in the remote future. If no relief had been possible prior to the effective date of the Act, the injury would have become irreparable. Prevention of impending injury by unlawful action is a well recognized function of courts of equity." In this case the decree of the lower court was sustained.

We are of the opinion that the petition for a declaratory judgment relative to the constitutionality of chaps. 52 and 179 of P. L. 1960 was not in the circumstances here prematurely brought and that the superior court may properly enter a declaratory judgment therein.

We answer question 15 in the affirmative.

The papers in the case with our answers to the questions certified are remitted to the superior court for further proceedings.

*Moore, Virgadamo, Boyle & Lynch, Cornelius C. Moore,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Albert J. Hoban,* Special Assistant Attorney General, *Corinne P. Grande,* Special Counsel for State (for respondent).