301 A.2d 342.

DOMESTIC SAFE DEPOSIT COMPANY *et al. vs.*
RAYMOND H. HAWKSLEY *et al.*
THE RHODE ISLAND BANKERS' ASSOCIATION *et al. vs.*
AVCO LOAN AND INVESTMENT COMPANY *et al.*

MARCH 13, 1973.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

KELLEHER, J. On December 23, 1970 a majority of the Board of Bank Incorporation affirmed the issuance of a certificate of public convenience and necessity which al-

lowed Avco Loan and Investment Company[1] to commence its commercial activities. Thereafter, most of the licensed moneylenders in this state filed a series of appeals in the Superior Court challenging the grant of the certificate. The appeals were consolidated for a hearing before a justice of that court who then affirmed the action of the board. We have issued writs of certiorari as called for by G. L. 1956 (1969 Reenactment) §42-35-16 of the Administrative Procedures Act and have consolidated the appeals taken from the Superior Court to this court.

Before beginning our consideration of this appeal, we shall attempt to delineate the Avco family tree. Avco is a corporation whose stock is traded on the New York Stock Exchange. For want of a better word, it could be described as a conglomerate whose operations, products and services run the gamut from life insurance to consumer finance, to movies, to television, all the way to the manufacture of a heat-shielding system which protects the astronauts as they reenter the earth's atmosphere after a flight to the moon. During 1970, Avco planned to consolidate the consumer finance portion of its business under the name of Avco Financial Services. Avco first entered this particular

---

[1]The incorporation procedure for loan and investment companies is found in G. L. 1956 (1968 Reenactment) ch. 20 of title 19. Essentially it calls for an incorporation agreement executed by five or more subscribers with the amount of capital stock to be equal to at least $250,000. The agreement is then filed with the board and is treated as an application for the certificate of public convenience and necessity. Between the filing of the agreement and the board's hearing on the application, the subscribers meet to adopt bylaws and elect officers and directors. If the board grants the application, the certificate of public convenience and necessity is filed with the Secretary of State along with a certificate by the General Treasurer attesting to the payment of the incorporation fees. The Secretary of State then issues his certificate of incorporation and the corporation is then ready to do business. Much of the procedures just described are set forth in ch. 1 of title 19 which deals with the organization of banks and trust companies and are incorporated by reference in ch. 20 of title 19.

field when in 1964 it formed Avco Delta. Later, in 1969, Avco acquired Seaboard Finance Company. Avco Loan and Investment Company is a Rhode Island corporation whose principal office will be located in Cranston. All but 60 of its 2500 shares have been subscribed for by Avco Financial Services. The other subscribers are either officers or counsel for Avco Financial Services. Hereafter, we shall refer to Avco as "Avco," Avco Financial Services as "Avco Financial" and Avco Loan and Investment Company as "Avco Loan."

The issues within the consolidated appeals can be divided into three categories: (1) "Need;" (2) "Fitness;" and (3) "The Board."

## I
## Need

The petitioners remind us of our recent holding in *Murray* v. *LaTulippe's Service Station, Inc.*, 108 R. I. 548, 277 A.2d 301 (1971), where we overturned the issuance by the Public Utilities Commission of a certificate of public convenience and necessity which would have permitted a service station operator to act as a common carrier in the towing of automobiles because the operator failed to show a public need for his proposed services. The protesting licensed moneylenders claim that there is no evidence that the credit services they offer are inadequate to meet the public demand. In other words, they argue that the applicants for the requisite certificate failed to show a need for another licensed moneylender in this state. What they overlook, however, is the sentiments expressed by this court in *Abbott* v. *Public Utilities Commission*, 48 R. I. 196, 136 A. 490 (1927), where it was pointed out that "public convenience and necessity" has no well-defined meaning. "Need" is a relative term and notwithstanding petitioners' position to the contrary, there was evidence of a need that justified the award made to Avco Loan. It was presented

by two educators. One was the chairman of Brown University's Political Science Department. The other was the chairman of its Economics Department. The political scientist presented statistics that showed a rising demand in credit coupled with a monopolistic trend in satisfying this demand which favored the banks and trust companies at the expense of other licensed financial institutions such as loan and investment companies. It was demonstrated that on the national scene banks had a smaller percentage of the consumer credit market than they do in Rhode Island. Reports filed with the board also showed that of the nine companies who were as of 1968 authorized to operate a loan and investment company, three are now almost inactive while three others had become affiliated with each other.

The political scientist and the economist both agreed that competition is as desirable in the area of consumer finance as it is in other facets of our free enterprise economic system. Competition offered by Avco Loan, they said, could improve services, lower the interest rate and reduce the threat of monopoly. It has been held that the Interstate Commerce Commission, in granting a certificate of public convenience and necessity, may consider such factors as competitive stimulation and anti-monopoly prophylaxis. *Short Line, Inc.* v. *United States*, 290 F. Supp. 939 (D. R. I. 1968). What was said there applies equally to the loan and investment business.

The petitioners' prime complaint with the statistical data is that it failed to include the activities of federal savings and loan associations, federal credit unions, and small loan, second mortgage and general lender licensees. The combined assets of this group amount to a little over $216,000,000. This amount, however, constituted just about six percent of the total assets of the licensed lenders. The applicants' witness' basic methodology was sound and the

board, if we keep in mind its expertise in this field, was able to take into consideration the import of the missing data on the experts' conclusions.

It is to be conceded that the motives of Avco Financial are not purely altruistic. For that matter, we cannot say that petitioners' opposition could be described as being 100 percent "pro bono publico." As a licensed loan and investment company, Avco Loan will be able to charge more than the maximum 15 percent interest Avco Financial presently charges as a second mortgage licensee under §19-25.2-23. Increased profits, however, can be incidental to a benefit conferred on the public. There was testimony that a higher interest rate that Avco Loan could charge might make funds available to some who could not be considered as candidates for a loan at the 15 percent rate. In addition, the new license could afford a one-stop banking service not presently available to Avco Financial customers. Avco Loan could not only make loans but it could accept deposits.

The board found that the proposed enterprise would accommodate the public and that the grant would not endanger the financial well-being of any of its potential competitors. There is competent evidence in the record to show the requisite need and that the public convenience and necessity would be served.

## II

### Fitness

This portion of the appeal is based upon petitioners' contention that there is no competent evidence that Avco Loan is fit and competent to perform as a loan and investment licensee because of an erroneous ruling made by the board when it entered as exhibits two printed progress reports showing the business done by Avco Delta and Avco Financial for the nine-month period ending August 31, 1970. These two documents were presented by the appli-

cants' attorney who stated that they were the most recent reports available.

The petitioners refer us to §42-35-10(a) which in pertinent part states that all agencies subject to the Administrative Procedures Act shall be bound by the rules of evidence that apply in the trial of civil cases in the Superior Court except that if it is necessary to ascertain facts which are not reasonably susceptible of proof under those rules, evidence not admissible under the rules may be used provided it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Proof of the disputed corporate records, so claim petitioners, could have been made pursuant to the provisions of §9-19-13. Under this statute, a record is admissible only if there is evidence that (1) it is made in the regular course of business; (2) it is the regular course of business to make such a record; and (3) the record must have been made at or near the time of the act, transaction or event. *Webbier* v. *Thoroughbred Racing Protective Bureau, Inc.*, 105 R. I. 605, 254 A.2d 285 (1969).

Even assuming that the business record statute should have controlled the board's ruling on the admissibility of the progress reports, the findings as to fitness and suitability of the applicants to operate a loan and investment company rest on other evidence. A vice president of Avco Financial testified that he had been affiliated with the consumer credit industry for over 17 years. He further testified that Avco Financial had been doing business in this state and that its $5,000,000 loan portfolio would be taken over by Avco Loan. The board cast aside the various corporate cloaks and emphasized that Avco Loan is part and parcel of Avco. It referred to Avco's financial reports. They are exhibits. No objection was made to their presentation and they demonstrate the substantial financial backing which is available to Avco Loan. Avco, of course,

is subject to the control and scrutiny of such federal regulatory agencies as the Securities and Exchange Commission and the Federal Trade Commission.

The board took notice of the records of the Department of Business Regulation. They show that Avco Financial was authorized to conduct various financial businesses in this state. This was further proof of the applicants' ability to conduct a business honestly, fairly and efficiently.

Even though it is true that an executive of Avco Financial, who testified before the board, demonstrated a lack of knowledge about some parts of Avco's corporate makeup, it must be remembered that the conglomerate is engaged in such a variety of activities that the witness' fallibility regarding Avco's fiscal and corporate affairs is understandable. Apparently, at the time of the board's hearing, Avco's planned consolidation of its consumer finance services had not been completed. There is in the record evidence apart from the progress reports which justifies a conclusion that the applicants who sought the licensing of Avco Loan were fit, proper and responsible parties.

### III

### The Board

The Board of Bank Incorporation consists of the director of the Department of Business Regulation, the General Treasurer and the Attorney General. The board's decision and order issuing the certificate have the signatures of the director and the General Treasurer. The Attorney General voted to deny the application. Section 19-1-9 which sets forth the procedural requirements for the licensing provides that if public convenience and advantage[2] will be

---

[2]Section 19-20-3 incorporates by reference the technical requirements of §19-1-9 pertaining to banks and trust companies, which uses the standard "public convenience and advantage." The standard for loan and investment companies is, however, public convenience and necessity. Public Laws 1966, ch. 255, sec. 2.

promoted by the establishment of said bank or trust company, *each* member of said board [of Bank Incorporation] shall so certify his approval on the certificate.

The petitioners contend that the use of the word "each" shows a legislative intent that no certificate can be issued if there is a diversity of opinion prevalent among the members of the board. We cannot agree.

Section 43-3-5 gives the answer. It states: "All words purporting to give a joint authority to three (3) or more officers or persons shall be so construed as to give such authority to a majority of them." This section appears in the chapter entitled "Construction and Effect of Statutes" and applies to all statutes unless its observance is manifestly inconsistent with the legislative intent.

One final word in this regard. In *Bray* v. *Barry,* 91 R. I. 34, 160 A.2d 577 (1960), this court said that in absence of persuasive circumstances or a statutory directive to the contrary, it is a well-recognized principle that a majority constitutes a quorum and if a quorum is present, the legislative, judicial or administrative body has authority to act in those matters coming within its jurisdiction. An obvious corollary to this principle is that a majority vote is sufficient for a legislative, judicial or administrative body to act in those matters within the ambit of its jurisdiction. If the General Assembly intended that the board could act only if in unison, it would have expressed such a unique requirement with a clarity that is not found in ch. 1 of title 19.

In our review of the Superior Court's limited jurisdiction under the Administrative Procedures Act, we neither pass on credibility nor determine if the evidence is strong or weak, direct or circumstantial, but only determine whether the action being reviewed was so arbitrary or capricious as to constitute an abuse of discretion, whether there was any legal evidence to support it, and whether the licensing pro-

cedure was otherwise affected by an error of law. *Chernov Enterprises, Inc.* v. *Sarkas,* 109 R. I. 283, 284 A.2d 61 (1971).

There was no abuse of discretion. There is legal evidence to support the award of the disputed certificate. There is no error of law.

In each case the petition for certiorari is denied and dismissed, the writs heretofore issued are quashed and the records heretofore certified to us are ordered returned to the Superior Court with our decision endorsed thereon.

Mr. Justice Paolino heard oral arguments but did not participate in the decision.

Mr. Justice Powers participated in the decision but retired before its publication. Mr. Justice Doris did not participate.

*Adler, Pollock & Sheehan, Edward L. Maggiacomo,* for Domestic Safe Deposit Company et al.

*Tillinghast, Collins & Graham, Andrew A. DiPrete, Peter J. McGinn,* for Rhode Island Bankers' Association et al. (for appellants).

*Pucci, Zito & Goldin, Thomas D. Pucci, Edward S. Goldin, Samuel A. Olevson,* for appellee, Avco Loan and Investment Company.