405 A.2d 1171.

## THE HERALD PRESS, INC. *vs.* JOHN H. NORBERG, TAX ADMINISTRATOR.

AUGUST 27, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. This is a petition for certiorari to review a Superior Court judgment affirming a decision of the tax administrator assessing a sales and use tax against The Herald Press, Inc. (Herald), a printing firm in Pawtucket, Rhode Island.

Herald challenges the sales and use tax assessed on two transactions. The first challenge involves the use tax imposed as a result of the alleged purchase by Herald of certain capital assets from Hendrix Electronics, Inc. (Hendrix), a manufacturer of electronic computer systems in New Hampshire. The second challenge involves the sales tax assessed on an advertising flyer printed by Herald for India Imports of Rhode Island, Inc. (India Imports).

On July 18, 1975, Herald was sent a notice of a deficiency determination under the sales and use tax law. The stated deficiency, including interest and penalty, was $8,422.07. A

hearing was requested and was later held on November 4, 1975, before a hearing officer of the Division of Taxation. A revenue agent testified he had performed the audit on Herald and that he had mailed the deficiency determination. He went on to testify that the assessment of the portion of the deficiency determination involving the transaction with Hendrix was based on the information contained in a letter received by his supervisor from Hendrix and on an examination of invoices sent to Herald by Hendrix. According to the revenue agent, Herald made three separate purchases of equipment from Hendrix. He stated that the first purchase was in the amount of $31,896 and occurred on August 30, 1974. He stated the second and third purchases were for $14,312 and $5,600 and occurred on January 13, 1975 and January 31, 1975. The agent also testified that according to his supervisor all the items acquired by Herald from Hendrix were fully installed and operating. The revenue agent, however, conceded that "[t]o tell you the truth, I didn't see any of these three pieces of equipment" and that he "did not see the machinery producing a product." He further testified that the system was returned and that all payments were refunded on June 6, 1975. The agent stated that this was the only relevant information utilized in assessing the tax. He likewise stated that he assessed the deficiency because the law requires that the equipment must be returned within 120 days to be excluded as part of the "sale price." G.L. 1956 (1970 Reenactment) §44-18-12(B).

Mr. Walter Rutman (Rutman), the president of Herald, also testified at the hearing. He stated that Herald had not made a decision regarding the purchase of typesetting equipment "when a whole series of containers arrived from Hendrix * * *." Rutman testified that he learned from Mr. Faber (Faber), a sales representative of Hendrix, that the system had been sent without an okay. Rutman, however, also testified that Faber "Made some conditions that would make it more attractive to us to enter into an agreement with him." According to Rutman, the equipment was accepted solely on a trial basis and the cost of shipping and insurance was to be assumed by Hendrix.

Rutman also stated that the system was composed of four phases: two terminals and a computer in the first phase; additional terminals in phase two; a disc program in phase three; and a hyphenation and justification program in phase four. Rutman said "it was explained and understood by Mr. Faver [*sic*] that without the last phase, the rest of it was worthless." Rutman further stated that Herald tried to utilize the equipment, "but there were so many hardware failures, that we couldn't even test it properly." According to Rutman, the second phase was received in January 1975. He also stated that he had been told that Hendrix would do their utmost to send the third phase in January or the first of February 1975. Near the end of January, however, Rutman was informed that the model had not even been constructed. As a result, Rutman told Hendrix's eastern regional manager to "pull the whole thing out." Thereafter, Herald received the invoice dated January 31, 1975, and part of the third phase of the system. The material was never unpacked. After January 21, 1975, Herald made constant complaints about the equipment because, as Rutman explained, "[w]e couldn't get anything out of the program." Rutman rejected three alternative plans suggested in a letter dated March 18, 1975, from Hendrix's district sales manager.

According to Rutman, in the latter part of April an agreement was made to remove the equipment but the actual removal did not occur until June 6, 1975.

Rutman's testimony was mirrored by the affidavit of Faber who was no longer employed by Hendrix as of January 21, 1975. In his affidavit Faber stated he had assured Rutman that if the entire system did not work to Rutman's satisfaction, Hendrix would take back all of the equipment and refund all payments.

The tax administrator, in his final decision, approved and adopted the findings of fact and conclusions of law made by the hearing officer who had previously found that Herald had made three separate purchases from Hendrix. The hearing officer had also found that Herald had been dissatisfied

with the operation of the system and had returned the entire unit and received a refund on June 6, 1975. He concluded that the transactions were "sales" under §44-18-7 and that the merchandise had not been returned within 120 days of the date of sale or purchase. *See* §44-18-12(B); *Regulations and Rules Issued by the Tax Administrator under the Sales and Use Tax Law* at 104 (1977).[1] Therefore, the hearing officer had recommended that the deficiency determination be accepted as correct. The tax administrator approved and the trial justice affirmed.

The basic facts of the second transaction are undisputed. Herald printed certain advertising flyers for India Imports. The flyers, however, were delivered to T.C.S. Inc. of Providence for the insertion of order blanks before being sent to Mailways of Manchester, New Hampshire, for bulk mail delivery outside of Rhode island. The hearing officer determined that Herald exercised the right and power over the flyers and directed shipment to T.C.S. The fact that the flyers were subsequently placed in interstate commerce did not, in the view of the hearing officer, alter the fact that the sale was made by Herald and delivery was made in Providence at the direction of the customer. Accordingly, the hearing officer recommended that the deficiency be upheld and the tax administrator adopted this conclusion. The trial justice also upheld this portion of the sales tax deficiency assessment. He stated that the tax administrator could have opted to overlook the technicality of control but did not. Thus, the trial justice concluded that while he might have been inclined to view the problem differently, he would not substitute his view for that of the tax administrator.

In the present case the tax administrator's decision was reviewed in the Superior Court pursuant to the provisions of G.L. 1956 (1977 Reenactment) §42-35-15, as amended by P.L. 1966, ch. 112, §1. Herald asserts, however, that it was entitled to a de novo hearing in the Superior Court under the

---

[1]This regulation was originally promulgated July 1, 1947.

provisions of §44-19-18. This section was first enacted in P.L. 1947, ch. 1887, art. 2, §41, and was on the books when Herald's complaint in the Superior Court was filed on May 25, 1976.[2] That section provided in pertinent part that upon petition by an aggrieved person the Superior Court

> "shall proceed to hear said petition and to determine the correct amount of the tax, interest, and penalties."

However, Herald did not question the standard of review in the Superior Court. Indeed, Herald's complaint specifically states that the action was brought under the provisions of §42-35-15, the section of the Administrative Procedures Act dealing with the judicial review of contested cases. We can only say that we believe Herald properly instituted its complaint under §42-35-15.

The relationship between §42-35-15 and §44-19-18 has never been considered by this court. We observe, however, that §44-19-18 was in effect when chapter 35 of title 42 became effective on January 1, 1964. The Legislature also provided in §42-35-18 that the chapter applied to all agencies and agency proceedings not expressly exempted and that all acts and parts of acts "inconsistent herewith shall stand repealed." Accordingly, we have consistently stated that in enacting §42-35-15(a) the Legislature intended to provide a single and exclusive method of obtaining judicial review of agency action excluding only the decisions of specifically exempt agencies. *Colonial Hilton Inns of New England, Inc.* v. *Rego,* 109 R.I. 259, 284 A.2d 69 (1971); *New England Telephone & Telegraph Co.* v. *Fascio,* 105 R.I. 711, 254

[2]General Laws 1956 (1970 Reenactment) §44-19-18 was amended by P.L. 1976, ch. 140, §27. The pertinent language of the section was unchanged except that provision was made for review in the Sixth Division of the District Court instead of the Superior Court. A sentence was also added at the end of §44-19-18 providing that an aggrieved party may seek review in this court by writ of certiorari in accordance with the procedures contained in G.L. 1956 (1977 Reenactment) §42-35-16. Herald contends that by including the same language in the amended section the Legislature again manifested an intent to provide for a de novo judicial review of the decisions of the tax administrator. The amendment, however, did not take effect until October 1, 1976, and has no effect on this case. P.L. 1976, ch. 140, §34. Thus, the issue of the effect of readoption of the same statutory language is not squarely presented. We observe, however, that the language directing a court to "hear and determine" a petition does not necessarily indicate a legislative intent to provide for a trial de novo. *See E. Grossman & Sons, Inc.* v. *Rocha,* 118 R.I. 276, 373 A.2d 496 (1977).

A.2d 758 (1969); *Yellow Cab Co.* v. *Public Utility Hearing Board,* 101 R.I. 296, 222 A.2d 361 (1966).

We considered an analogous issue in *Sterling Shoe Co.* v. *Langton,* 103 R.I. 688, 240 A.2d 727 (1968). There we held that the Administrative Procedures Act supplanted certain portions of §44-10-11 and §44-19-17. We have also recently stated that review of a tax administrator's decision is properly sought under the provisions of §42-35-15. *Rice Machinery, Inc.* v. *Norberg,* 120 R.I. 542, 391 A.2d 66, 69 n.2 (1978); *see Prospecting Unlimited, Inc.* v. *Norberg,* 119 R.I. 116, 376 A.2d 702 (1977). Although the issue presented may not have been raised in the foregoing cases, we believe that the statements in those cases were correct. This court must assume that the Legislature intended to have all statutes relating to taxation construed to be consistent and to effectuate and not defeat the policy of those laws. *Edwards* v. *Cardarelli,* 65 R.I. 236, 14 A.2d 693 (1940). Further, statutes in pari materia should be construed together in order that they may be harmonious and consistent with their general scope and purpose. *State* v. *St. Pierre,* 118 R.I. 45, 371 A.2d 1048 (1977).

In the present case, we believe that the procedures and standards of review contained in §42-35-15(b) were clearly intended to be incorporated into the provisions of §44-19-18. In fact, the only identifiable disparity between these sections is the period in which appeals must be filed. Accordingly, we conclude that Herald was not entitled to a de novo review in the Superior Court and that the procedure was properly conducted under the provisions of §42-35-15.[3]

Herald contends that the decision of the tax administrator was illegal because the procedure by which his decision was reached deprived Herald of property without the due process

---

[3]Herald also obliquely contends that its due process rights were not protected because §42-35-15 effectively makes the tax administrator's factual determinations final. This argument was not raised in the Superior Court and is not properly before us. *Tente* v. *Tente,* 112 R.I. 636, 314 A.2d 149 (1974). In any event, the argument raised by Herald is untenable in light of modern administrative law principles. *See generally,* 4 Davis, Administrative Law §§29.08; 29.09 (1958). The Legislature has provided in §42-35-15(g) that the review of factual findings is to be limited in nature. We observe that a similar standard of review is embodied in 5 U.S.C.A. §706 (1977). Further, the Supreme Court has applied a doctrine of

law guaranteed by the Fourteenth Amendment of the United States Constitution. Specifically Herald alleges the requirement in §42-35-15 that a taxpayer pay the assessed tax before obtaining judicial review of a decision of the tax administrator operated to deprive Herald of property without due process. Herald also contends that it was deprived of property without due process because the tax administrator who has a statutory duty to collect and assess taxes, must also determine the validity of the assessment. At bottom, Herald is arguing that the tax administrator is inherently biased due to his statutory duty.

We addressed the first contention in *Moore* v. *Langton,* 92 R.I. 141, 167 A.2d 558 (1961). We held that a statute requiring the tax on intangible personalty to be paid before a taxpayer could sue in the Superior Court did not deny due process. We also believe that a taxpayer is not deprived of property without due process because the tax administrator, who has a statutory duty to collect and assess taxes, must also determine the validity of the tax. The Supreme Court faced an analogous issue in *Withrow* v. *Larkin,* 421 U.S. 35, 95 S. Ct. 1456, 43 L.Ed. 2d 712 (1975). There the Wisconsin State Medical Examining Board was empowered to investigate and determine whether physicians had engaged in prohibited acts and whether disciplinary action should be taken. The subject physician challenged the board's power to temporarily suspend his license on the ground that his due process rights would be violated if the board investigated and also determined the suspension. The Supreme Court, however, rejected the challenge. The Court determined that the mere fact that the board combined investigatory and adjudicatory functions did not trespass on constitutional rights. While the Court conceded that a fair hearing in a fair tribunal was basic to due process, the Court stated that absent special factors in a particular case the performance of such functions by the board did not contravene due process. *See also Sterling Shoe Co.* v. *Norberg,* 411 F. Supp. 128 (D.R.I. 1976). In the

limited review on issues factual in nature of which the following cases are illustrative. *Cardillo* v. *Liberty Mut. Ins. Co.,* 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028 (1947); *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U.S. 251, 60 S. Ct. 544, 84 L. Ed. 732 (1940); *Del Vecchio* v. *Bowers,* 296 U.S. 280, 56 S. Ct. 190, 80 L. Ed. 229 (1935).

present case the taxpayer, Herald, has demonstrated no specific facts to lead us to believe that the administrative procedure utilized in determining the tax deficiency was improper in terms of due process.

Although the tax administrator has the duty and responsibility to collect all taxes which are due and payable under appropriate and pertinent statutes, as interpreted and amplified by valid regulations, the tax administrator has an equal duty and responsibility to accord to every taxpayer every exemption and deduction to which he is entitled under those statutes and regulations. The performance of these duties does not create an inherent bias on the part of the administrator which would preclude an impartial examination and weighing of the evidence or application of law. *See Powell* v. *Ward,* 542, F.2d 101 (2d Cir. 1976); *Chelsea Community Hospital* v. *Michigan Blue Cross Association,* 436 F. Supp. 1050 (E.D. Mich. 1977).

## THE HENDRIX ISSUE

Herald contends that a tax deficiency should not have been assessed on the transaction with Hendrix because the bargain was for the sale on approval of a total system which was never delivered and never accepted. Therefore, Herald contends that the 120-day period allowed for return of merchandise never began to run. The tax administrator responds by arguing that the trial justice properly found there was sufficient evidence in the record to uphold the tax administrator's conclusion that three separate taxable transactions had occurred.

Our review under §42-35-16 is limited to a review of "any questions of law involved." We have described this review as being limited to determining whether there is any competent evidence to support the trial justice's decision. *Correia* v. *Norberg,* 120 R.I. 793, 391 A.2d 94 (1978); *Prospecting Unlimited, Inc.* v. *Norberg, supra; Couture* v. *Norberg,* 114 R.I. 704, 338 A.2d 538 (1975); *Domestic Safe Deposit Co.* v. *Hawksley,* 111 R.I. 224, 301 A.2d 342 (1973).

We observe that hearsay evidence was admitted on behalf of both sides. In the present case the revenue agent testified

on the basis of information gained from a letter sent by Hendrix's vice president of finance that three separate purchases had occurred. This testimony as well as the letter were admitted into evidence without objection. Faber's affidavit was introduced without objection in support of Herald's position. In his affidavit, Faber stated that he had assured Rutman if the system did not work to Rutman's satisfaction, Hendrix would take back the equipment and refund all payments. On direct examination Rutman testified in effect, that the bargain was for the sale of an entire system and that "without the last phase, the rest of it was worthless." We observe that once admitted, the hearsay testimony was properly considered as competent legal evidence. *Correia, supra; see* §42-35-10(a). Further, we do not pass on issues of credibility or determine if evidence is strong or weak. As stated previously, we only review the record to determine whether there was any competent evidence to support the decision. *Correia, supra.* Acordingly, we must affirm the decision of the trial justice in regard to the Hendrix transaction. In making this determination we note that under §44-18-12 "sale price" does not include the "amount charged for property returned by customers upon rescission of the contract of sale" when the full amount is refunded and the property returned within 120 days. The pertinent regulation extends the 120-day period to sales "*on trial, on satisfaction, on sale or return.*"[4] We believe that the tax administrator, in promulgating this regulation, did not alter or amend the scope of the statute. *See Statewide Multiple Listing Service, Inc.* v. *Norberg,* 120 R.I. 937, 392 A.2d 371 (1978). Further, the regulation is not plainly inconsistent with the operative language of the statute. *Brier Manufacturing Co.* v. *Norberg,* 119 R.I. 317, 377 A.2d 345 (1977).

## THE INDIA IMPORTS ISSUE

We recently observed in *Coachman, Inc.* v. *Norberg,* 121 R.I. 316, 397 A.2d 1320 (1979), that under §44-19-33, the rules and regulations promulgated by the tax administrator are prima facie evidence of proper interpretation of the Sales

[4]*Regulations and Rules Issued by the Tax Administrator under the Sales and Use Tax Law* at 105-06 (1977). The same regulation appeared in the Rules effective December 10, 1968.

and Use Tax Act. A pertinent regulation in effect at the time of the transaction stated that:

> [W]here the printer does not make delivery in this state to the purchaser of advertising material which is printed for distribution and use outside the state, but said material is delivered by the printer to a mailing agency in Rhode Island for such distribution by order of the purchaser, the tax will not apply inasmuch as such mailing by said mailing agency is deemed to be mailing by the printer.[5]

In the present case, Herald delivered the flyers to T.C.S. which in turn sent the flyers to Mailways in New Hampshire. Thus, the transaction in this case was effectively the same as that described by the foregoing regulation. Indeed, if Herald had sent the flyers to New Hampshire or to a Rhode Island mailing agency, it is clear under the regulation that the transaction would not be taxable. The result should be no different because Herald sent the flyers to T.C.S. for the insertion of order blanks at the direction of the purchaser. The facts relating to this issue are undisputed, and we believe that the only reasonable inference which can be drawn in light of the regulation is that the tax does not apply. Thus, an issue of law is presented which we are constrained to resolve in favor of Herald. *DeNardo* v. *Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 399 A.2d 1229 (1979). Accordingly, the portion of the judgment regarding the India Imports flyer must be reversed.

The judgment of the Superior Court is affirmed in part and reversed in part and the case is remanded to the Superior Court.

*Smith & Smith, Incorporated, Z. Hershel Smith,* for petitioner.

*Dennis J. Roberts II,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondent.

---

[5]*Regulations and Rules Issued by the Tax Administrator under the Sales and Use Tax Law* at 26 (Issued January 3, 1977). The identical regulation appeared at page 29 of the December 10, 1968 issue.