# John D. Pessano *v.* Lincoln L. Eyre, Appellant.

*Contract—Parol contract—Province of court and jury.*

Where a contract consists of spoken words, and the parties differed as to the meaning of the words used, it is for the jury and not for the court to determine the sense of the words used, and what the parties meant to express by them.

*Attorney at law—Liability for witness fees.*

An attorney at law may make himself personally liable by a special promise for the compensation of an expert witness called to testify for his client, especially if there be evidence in the case to warrant the jury in believing that the attorney had a personal financial interest in the result.

Argued Dec. 13, 1899. Appeal, No. 35, Oct. T., 1899, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1896, No. 454, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by ORLADY, J.

Assumpsit. Before WILLSON, P. J.

From the record it appears that plaintiff was a real estate expert and had been engaged to testify in a suit against the city of Philadelphia for damages caused by the construction of a sewer. The engagement was originally made by Mr. Freeston who had been employed by defendant (counsel for the landowners) as an expert and to prepare plans and employ other experts. Plaintiff testified before the road jury. For

this testimony he sent in a bill for $75.00. He testified to the following conversation with the defendant, alleged to have occurred before the trial in court:

"I told him that I did not propose to go into court to testify in these cases where the cases were taken upon a speculative basis, that I could not afford to waste my time that way, and that before I would go into court to testify at all, that he must give me some guarantee that I would be paid for the services rendered, not only in this matter, but in the matter before the road jury. He said that he would do that, and the same day called me in another case, for which he has since paid me." This conversation was denied by defendant.

Other facts appear in the opinion of the court and in the following portion of the charge of the trial court:

[The plaintiff claims that the defendant undertook to pay him for his services, not, as I understand it, technically, that he guaranteed that payment—that is, to pay if somebody else did not, but that he undertook to pay for them. You are to determine the meaning of the language used by the witness— what it meant in the connection and in the manner in which it was uttered. If this was a technical guaranty, that is, a promise on the part of the defendant to pay the bill if somebody else did not, then the plaintiff has failed to show the step taken on his behalf against the principal or original employer, if there was such a person, in order to hold the guarantor responsible.] [1]

\*        \*        \*        \*        \*        .\*         \*        \*

[The first question for you to take up, it seems to me, is: Did or did not the defendant, Mr. Eyre, agree to pay this bill? You have the testimony on one side and you have the testimony on the other. Mr. Eyre distinctly denies, as I understand his testimony, that he made any promise of the sort. He says that his arrangement was made with a man by the name of Freeston, who was here as a witness, and that he did not employ Mr. Freeston to be his agent, but employed him to be the expert, and that, so far as Mr. Freeston's act of requesting anybody else to justify in the case, that was something for Mr. Freeston to attend to, and not for Mr. Eyre to be responsible for. Mr. Pessano, the plaintiff, admits that Mr. Freeston was the first man who spoke to him on the subject, and, as I understand it,

he had no personal dealings with Mr. Eyre in regard to the matter until after the services had been rendered before the jury, until the first bill, as he claims, for $75.00, had been incurred, and then it was he said he came into contact with Mr. Eyre, and had the conversation with him which he claims to have been an understanding on Mr. Eyre's part to pay the bill. He says he declined to go any more unless Mr. Eyre would undertake to pay him, not only for what he had done, but for what was to come. If Mr. Eyre did, under those circumstances, undertake to pay the bill—for the past as well as for future services—the promise would be obligatory; but if he made no such promise— if the plaintiff is mistaken in that—then there would be no liability on the part of the defendant. That is a question of fact for you to settle in the evidence. I do not think it necessary for me to enlarge upon it. It is a plain question with a very sharp contradiction of the witnesses on the point.] [2]

Plaintiff's points and the answers thereto among others were as follows : :

[1. If from the evidence the jury believe that the plaintiff was employed by the defendant as an expert witness, through the agency of one Freeston, and that at the time of said employment plaintiff made inquiry as to the defendant's connection with the case, and was subsequently instructed to render his bill to the defendant, made out in defendant's name, and did so render it, and that the defendant received said bill and retained it in his possession without objection, and on the contrary stated to the plaintiff that it would be paid when the case was tried in the court of common pleas, the jury are entitled to infer that the plaintiff was employed by the defendant on his individual responsibility, and that by his acts he has recognized a legal liability for the plaintiff's compensation. *Answer :* There is too much involved in that point for me to affirm it as it is stated. I think I have stated to you somewhat more accurately what the law is upon that point. You are to take all the circumstances which are embraced in the point and all other evidence in the case which bears upon it, and then determine whether or not, in your opinion, the defendant did undertake any such obligation.] [3]

[2. Even if the jury should find that the plaintiff agreed to look to Freeston for his compensation for the testimony given

and services rendered before the jury of view, yet if he subsequently notified the defendant that he would look to him personally for payment in the matter, and defendant assented to the arrangement and agreed to pay the services thereafter to be rendered, defendant is liable for the plaintiff's compensation for services as an expert witness in court of common pleas No. 2. *Answer :* That is correct.] [4]

Defendant's points and the answers thereto among others were as follows :

[2. It being admitted by the plaintiff that he knew that the defendant was acting as counsel for his clients, and there being no evidence of an absolute and unconditional promise on the part of the defendant to pay the plaintiff for the services to be rendered by him to defendant's clients, the verdict of the jury must be for the defendant. *Answer :* That I decline, because it asks me to give you definite instructions as to what your verdict must be. You are to take that as a question of fact to be decided, as I have already told you. If Eyre was acting and understood to be acting, had a right to be understood as acting, merely as the representative of his clients, not undertaking a personal responsibility, your verdict ought to be for the defendant.] [5]

[3. The plaintiff having testified that the defendant undertook and agreed to be personally responsible for and liable to plaintiff for his fees or compensation as an expert witness in the said actions in which the defendant was employed as counsel, and there being no evidence that the plaintiff has exhausted his remedies against the defendant's clients, or taken any steps to collect his fees from them, the verdict of the jury must be for the defendant. *Answer :* I decline so to instruct you. Upon that point I have said to you in my general charge all that is needed. I said to you then, and I repeat it, that if any promise which the defendant made was simply a promise to become responsible for somebody else paying money, if that was all the promise there was, then the plaintiff has not pursued the steps necessary to enable him to hold the defendant for the failure to keep such a promise.] [6]

[4. The law requires that a guarantee for the payment of a debt of another or the promise to be responsible for the debt of another shall be in writing where the amount due exceeds the

sum of $20.00, and there being no evidence before the jury that the alleged promises of the defendant was in writing, the verdict of the jury must be for the defendant. *Answer:* That depends altogether upon the question which I have already stated to you, as to whether this was a direct promise or an assumption of an original obligation on the part of the defendant, or whether it was a promise to pay what somebody else was primarily bound to pay.] [7]

[7. Under all the evidence, the verdict of the jury must be for the defendant. *Answer:* I decline that point.] [8]

Verdict and judgment for plaintiff for $112.50. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*D. Webster Dougherty,* for appellant.—The contract to give a guarantee is required to be in writing as much as the guarantee itself: Wambold v. Foote, 2 Ont. App. 579.

A promise to indorse a note is within the statute of frauds: Gallagher v. Brunel, 6 Cow. 350. So also a promise to go security for the delivery of property: Martin v. England, 5 Yerg. 317.

Nor is there any distinction under the statute of frauds between promises to guarantee past, present or future debts: 1 Reed's Statute of Frauds, sec. 31. Where the promisor uses language such as " I will get you a guarantee," or, " I will see that you are paid," the weight of authority has established such a promise to be a guarantee, and not an original obligation: 1 Reed's Statute of Frauds, sec. 30; Cropper v. Pittman, 13 Md. 190.

Though the guarantor had promised in writing, a consideration would have been necessary to sustain the promise: Hite v. Wells, 17 Ill. 90.

An attorney is not liable for the fees of a witness summoned to testify for his client, unless upon a special promise to pay them: Weeks on Attorneys, 270, sec. 128.

The general rule that where one person contracts as the agent of another, and the fact of his agency is known to the person with whom he contracts, the principal alone, and not the agent,

is responsible, has been considered directly applicable to the case of attorney and client.

An attorney is not liable for referee's fees : Judson v. Gray, 11 N. Y. 408.

It is only in cases where the creditor absolutely releases his claim against all third parties that the undertaking is enforced without a writing as an original contract: Miller v. Long, 45 Pa. 350 ; Shoemaker v. King, 40 Pa. 107 ; Maule v. Bucknell, 50 Pa. 39 ; Riegelman v. Focht, 141 Pa. 380 ; Okeson's Appeal, 59 Pa. 99 ; Nugent v. Wolfe, 111 Pa. 471 ; Dougherty v. Bash, 167 Pa. 429 ; Machine Co. v. Cann, 173 Pa. 392.

*Francis Chapman*, with him *S. Spencer Chapman*, for appellee.—It was for the jury to determine, not only what was said and done, but what the parties themselves intended by what they said and did : McFarland v. Newman, 9 Watts, 55 ; Brubaker v. Okeson, 36 Pa. 515 ; Jefferson Co. v. Slagle, 66 Pa. 202 ; Maynes v. Atwater, 88 Pa. 496 ; Boston v. Farr, 148 Pa. 220 ; Speers v. Knarr, 4 Pa. Superior Ct. 84.

Where the object of the promisor is to acquire some benefit to himself, such promise is not within the statute of frauds : Kelly v. Baun, 6 Pa. Superior Ct. 329 ; Burr v. Mazer, 2 Pa. Superior Ct. 436.

OPINION BY ORLADY, J., March 21, 1900 :

The plaintiff brought his action in assumpsit to recover an amount alleged to be due to him by reason of his alleged employment by the defendant to act as an expert witness in certain land damage proceedings before road reviewers and in the court of common pleas. The defendant was the attorney for the landowners, but the plaintiff claimed that at the time of his employment the defendant agreed to be personally responsible for and liable to him for the usual and customary charges for such services as he rendered. The appellant earnestly urges that the alleged promise to pay does not amount to any more than a guaranty, and there being no evidence that legal means had been exhausted against the principal, whose liability was guaranteed, there could not be any recovery. The plaintiff contended that the promise was personal and independent of the land owners, by reason of the case being what was called a speculative or contingent one.

Where the alleged contract consists of spoken words, and the parties differ as to the meaning of the words used, it is for the jury and not the court to determine the sense of the words used, and what the parties meant to express by them.  It is the province of the court to expound the meaning of an instrument, but not the words uttered, of which there can be no tenor.  It is the province of the jury to hear and to observe the witness and to determine the meaning of what he says : McFarland v. Newman, 9 Watts, 55 ; Brubaker v. Okeson, 36 Pa. 519 ; Boston v. Farr, 148 Pa. 220 ; Speers v. Knarr, 4 Pa. Superior Ct. 84 ; Loeb v. Mellinger, 12 Pa. Superior Ct. 592.  The court below complied with the decisions in submitting the case to the jury, viz : " You are to determine the meaning of the language used by the witness—what is meant in the connection and in the manner in which it was uttered.  If you are of the opinion that there was no express direct undertaking on the part of the defendant to pay what was due to the plaintiff that is the end of the matter, and your verdict should be in favor of the defendant.  If you think that there was a promise on his part, a direct substantial promise, to pay for the plaintiff's services, then another question would arise, and that would be, how much is the plaintiff entitled to receive ? "

There was sufficient evidence in the case to require its submission to the jury   An attorney at law may make himself liable by a special promise for the compensation of an expert witness called to testify for the client, especially if there be evidence in the case to warrant the jury in believing that the attorney had a personal financial interest in the result of the trial.

The assignments of error are overruled and the judgment is affirmed.