397 A.2d 1320.

THE COACHMAN, INC. *vs.* JOHN H. NORBERG, *Tax Administrator.*

FEBRUARY 20, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

DORIS, J.    We have issued a writ of certiorari pursuant to G.L. 1956 (1977 Reenactment) §42-35-16. The petitioner, The Coachman, Inc. (Coachman) seeks our review of a District Court order that upheld the tax administrator's assessment of a deficiency against the petitioner amounting to $8,505.09, plus interest and penalty, for certain sales and use tax due the state. There are three distinct areas of controversy.

## I.

Coachman operates a restaurant in Tiverton. In addition to providing public dining, Coachman contracts with private individuals for wedding receptions and parties. At the request of the patron Coachman engages musicians for the affair. Coachman pays the musicians the fees they are owed and then separately bills its customers the same amount as charged by the musicians. No sales tax was collected on these receipts. Essentially, Coachman contends that because it acts only as a conduit in booking and paying the musicians solely for the convenience of its customers and makes no profit thereon, these transactions are not subject to the sales-tax law.

The statutory pattern of the sales-tax law relating to this issue is unambiguous. G.L. 1956 (1970 Reenactment) §44-18-18 imposes a tax upon sales at retail measured by the gross receipts of the retailer from such sales. Section 44-18-13 defines gross receipts as "the total amount in respect of the sale price." Section 44-18-12 defines sale price as "the total amount for which tangible personal property is sold * * * including * * * [a]ny services that are a part of the sale, valued in money, whether paid in money or otherwise * * * [a]ll receipts, cash, credits, and property of any kind." Most significantly section 44-18-7D defines "sales" as including:

> "The furnishing, preparing, or serving for a consideration of food, meals, or drinks, including any cover, minimum, *entertainment*, or other charge in connection therewith." (Emphasis added).

Certainly the musicians' fees are covered by the term "entertainment" as used in section 44-18-7D. Accordingly, when Coachman received payment from its patrons of both the food and beverage bill and the charge for entertainment, the sum collected became part of the gross receipts and was includable in the measure of tax. Coachman's novel argument that it should not be taxed on the musician's fees because it made no profit thereon lacks merit. The sales-tax

law clearly states that the measure of tax is the amount of the gross receipts; there is no indication that the retailer is taxed only on the profits of a sale.

Coachman further argues that the instant case is analogous to the situation we confronted in *Potowomut Golf Club, Inc.* v. *Norberg*, 114 R.I. 589, 337 A.2d 226 (1975). In *Potowomut* the golf club imposed a monthly minimum charge on all golf-playing members to be applied against clubhouse food purchases. While the club paid a sales tax on the gross receipts realized from the actual sale of food, it paid no tax on the remainder of the fee that represented unconsumed food. The tax administrator assessed a deficiency on the total amount of the unused portion of the $15 fees. We reversed that ruling and held that the situation was not covered by the minimum charge language found in §44-18-7D. We noted that, "[e]ven if a club member never enters the dining room and never orders so much as a cup of coffee, he will be charged the $15 fee. The relationship between the fee and the food actually consumed is more tangential." *Id.* at 593, 337 A.2d at 228. Coachman argues that in the instant case the musicians' fees are also only tangentially related to the charge for food and drink. We do not find this argument persuasive. By booking and paying for the musicians, Coachman provides a valuable service for its patrons which may influence the customers' initial decision to hold their affairs at Coachman's restaurant. The benefit that accrues to Coachman is not so tangential as to justify nonpayment of the sales tax in light of the unambiguous statutory mandate.

## II.

Numerous Massachusetts-based organizations, operated for religious or charitable purposes, held functions at Coachman's restaurant. Although each of these organizations possessed tax-exempt numbers in Massachusetts, no such number had been issued to them by the appropriate Rhode Island authorities. Coachman collected no sales tax from these organizations. Coachman contends that the only reason the tax administrator refused to allow tax-exempt status to

these sales is because the purchasing organizations were from out of state. Coachman argues that this alleged policy of denying tax-exempt status merely on the basis of residency contravenes the equal protection clause of the fourteenth amendment to the Federal Constitution.

Section 44-18-30E provides that certain specified organizations are exempted from payment of the sales tax. By virtue of section 44-19-33, rules and regulations duly promulgated by the tax administrator are prima facie evidence of the proper interpretation of the Sales and Use Tax Act. *See Brier Mfg. Co. v. Norberg*, 119 R.I. 317, 323, 377 A.2d 345, 349 (1977). Just such a regulation was duly issued on December 1, 1963. This regulation prescribes that organizations operated exclusively for religious or charitable purposes must obtain an exemption certificate from the tax administrator. Sales to exempt entities, other than governmental bodies, are deemed taxable unless the retailer notes on his records the exemption certificate number assigned to such organization by the tax division. This clear requirement, which is consistent with the law, entirely removes from the retailer the decision whether a certain organization does or does not qualify for an exemption. Coachman's failure to comply with this reasonable requirement renders it liable for payment of the sales tax in these instances.[1]

### III

Finally, Coachman argues that it was improperly assessed a use tax on certain items of tangible personal property, including jackets and other clothing purchased for employees, which had a useful life of less than one year. Coachman contends that these items are exempt from the use tax by virtue of §44-18-30H. We note initially that "[s]tatutes purporting to grant an exemption from taxation are to be

---

[1]Because we hold that Coachman's noncompliance with the regulation is controlling, we need not address the constitutional argument raised by Coachman and express no opinion thereon. Additionally, we think it highly questionable whether Coachman has the requisite standing to raise this constitutional question on behalf of the out-of-state organizations.

strictly construed against the taxpayer and in favor of the public unless in their terms they disclose clearly an intention to grant an exemption." *Great Lakes Dredge & Dock Co. v. Norberg,* 117 R.I. 600, 608, 369 A.2d 1101, 1106 (1977); *see Red Fox Gingerale Co. v. Langton,* 100 R.I. 531, 534, 217 A.2d 466, 467 (1966). By its very terms the relevant portions of section 44-18-30H concern property consumed directly in the manufacturing process. A restaurant like Coachman is not engaged in "manufacturing" as that term is commonly understood, and §44-18-30H therefore is not applicable.

The petition for certiorari is denied, the writ heretofore issued is quashed, and the papers in the case are ordered returned to the District Court with our decision duly endorsed thereon.

*Moore, Virgadamo & Lynch, Ltd., Joseph R. Palumbo, Jr., Stephen A Haire,* for petitioner.

*Dennis J. Roberts II,* Attorney General, *Allen P. Rubine,* Assistant Attorney General, *Perry Shatkin,* Chief Legal Officer (Taxation), for respondent.