[No. 48261-6.   En Banc.   August 19, 1982.]

CHRISTENSEN, O'CONNOR, GARRISON & HAVELKA,
*Appellant*, v. THE DEPARTMENT OF
REVENUE, *Respondent.*

*Davis, Wright, Todd, Riese & Jones,* by *C. James Judson, Edward J. Larson,* and *Daniel M. Waggoner,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Karen Elledge* and *Jeffrey Goltz, Assistants,* for respondent.

DORE, J.—Plaintiff patent attorneys seek reversal of the trial court's summary judgment in favor of the Department of Revenue. Such summary judgment of dismissal, in essence, provided that plaintiff could not exclude from its gross income, for business and occupation tax purposes, amounts it received as reimbursements from its clients to pay the fees of foreign, non–Washington and Washington, D.C., lawyers, the fees of independent professional draftsmen and fees related to obtaining and maintaining patents in foreign countries.

The taxpayer is a law firm with its sole office in Seattle, Washington. The taxpayer provides services to clients who wish to obtain patents for their inventions in either the United States or foreign countries. Provision of these services requires the assistance of patent attorneys located in Washington, D.C., foreign patent professionals, and draftsmen specializing in patent illustrations.

We believe it would be helpful to factually relate the mechanics of a patent search via Washington, D.C.

In order to provide the client a legal opinion on the patentability of an invention, the taxpayer, with the consent of the client, requests the assistance of a Washington, D.C., attorney. The latter conducts a patent search and provides the taxpayer with a written search report isolating the features of existing patents considered pertinent to the client's invention and comparing the client's invention to those patents. The taxpayer reviews the search report and uses it as an essential part of preparing the taxpayer's formal legal opinion to the client on the patentability of the client's invention. The Washington, D.C., attorney bills the taxpayer for these services. The taxpayer pays the bill and requests payment in the amount of the bill from the client. It is the custom of the taxpayer's profession to pay such bills even if the client does not reimburse the taxpayer.

If the taxpayer's client decides to apply for a patent, the taxpayer prepares the patent application. A patent application generally must be accompanied by a set of drawings illustrating the pertinent features of the invention. In most

circumstances, the taxpayer retains an independent drafts-man to prepare those drawings for the client in keeping with the patent office technical requirements. The drafts-man prepares the drawings and transmits them to the tax-payer who incorporates them into the patent application. The taxpayer pays bills rendered to it by the draftsman and considers that it has a professional and ethical duty to do so. When the taxpayer seeks payment from the client, it adds to the amount of the draftsman's bill an additional $1 per hour of drafting time to compensate the taxpayer for the costs of dealing with the drafting matter.

If the client desires an invention to be patented in a for-eign country, the taxpayer sends a copy of the United States patent application, together with a cover letter, to a patent professional in the foreign country. The taxpayer generally selects the foreign associate firm. The associate firm insures that the application is processed appropriately. When periodic fees are required to maintain a foreign pat-ent, the client gives instructions regarding payment of such fees to the taxpayer. Then the taxpayer, through its own "tickler" system, takes responsibility for insuring payment of the fee by giving directions to the associate firm. The associate firm sends its bill for its services, including any patent application or maintenance fees it has paid, to the taxpayer. The taxpayer pays the bill and requests payment from the client in the amount of the bill. The taxpayer considers that it has a professional and ethical duty to see that the associate firm is paid.

The taxpayer on occasion pays amounts to lawyers in states other than Washington who handle patent litigation in those states in which the clients of the taxpayer are involved. When the taxpayer pays fees billed by a domestic, out–of–state firm, it then bills the clients for those amounts.

In accordance with the custom of the taxpayer's profes-sion, there exists an understanding between the taxpayer and these third parties (the foreign patent professional, out–of–state lawyer, and independent draftsman) that the

taxpayer will pay for the services performed by these third parties. The taxpayer does not enter into a written or oral contract regarding payment of such bills. Also in accordance with professional custom, the taxpayer will seek payment of the amounts of such third party bills from its clients.

The taxpayer in this appeal asserts that Washington law, by virtue of the promulgation of Rule 111, "exempts from gross income" the payments at issue in this action, and that such payments were received in the course of taxpayer's business, and are subject to deduction as "reimbursements" under WAC 458–20–111 (Rule 111). On the other hand, the trial judge held that the fees at issue before the court are properly included in the taxpayer's gross income. Under Washington law, business and occupation tax is imposed on the entirety of a taxpayer's gross income without regard to the profitability of the business, and without deduction or exclusion of the taxpayer's cost or expenses of doing business. As both parties rely upon Rule 111 to anchor their respective positions, we believe it would be helpful to set forth in pertinent part WAC 458–20–111 (Rule 111):

Advances and reimbursements. The word "advance" as used herein, means money or credits received by a taxpayer from a customer or client with which the taxpayer is to pay costs or fees for the customer or client.

The word "reimbursement" as used herein, means money or credits received from a customer or client to repay the taxpayer for money or credits expended by the taxpayer in payment of costs or fees for the client.

The words "advance" and "reimbursement" apply only when the customer or client alone is liable for the payment of the fees or costs and *when the taxpayer making the payment has no personal liability therefor, either primarily or secondarily, other than as agent for the customer or client.*

*There may be excluded from the measure of tax amounts representing money or credit received by a taxpayer as reimbursement of an advance in accordance with the regular and usual custom of his business or profession.*

The foregoing is limited to cases wherein the taxpayer, as an incident to the business, undertakes, on behalf of the customer, guest or client, the payment of money, either upon an obligation owing by the customer, guest or client to a third person, or in procuring a service for the customer, guest or client which the taxpayer does not or cannot render and for which no liability attaches to the taxpayer. *It does not apply to cases where the customer, guest or client makes advances to the taxpayer upon services to be rendered by the taxpayer or upon goods to be purchased by the taxpayer in carrying on the business in which the taxpayer engages.*

(Italics ours.)

### DECISION

Rule 111 clearly provides an exclusion from gross income for reimbursements of associate firms. Consequently, a payment to a taxpayer from a client is excluded from the taxpayer's gross income if (1) it is a customary reimbursement for an advance made to procure a service for the client, (2) the taxpayer does not or cannot render the service, and (3) the taxpayer was not liable for the payment.

The Department of Revenue and the trial court relied heavily, as a basis for their decision, on the case of *Coachman, Inc. v. Norberg*, 121 R.I. 316, 397 A.2d 1320 (1979). *Coachman* involved a restauranteur's liability for Rhode Island sales tax for vendees' reimbursements of fees paid by the restauranteur to musicians for private parties held at the taxpayer's restaurant. *Coachman*, 397 A.2d at 1321. The law under which *Coachman* was decided was entirely different from the law involved here. No exclusion similar to that provided by WAC 458–20–111 was invoked. *Coachman*, 397 A.2d at 1321. At most, *Coachman* can stand for no more than the proposition that, *without* the exclusion of Rule 111, the instant payments would be included in the taxpayer's gross income.

All the requirements of Rule 111 are satisfied by the parties' stipulation.

### I. Repayments are customary reimbursements for advances made to procure a service for the client.

The first requirement of the Rule 111 exclusion is that the repayments received by the taxpayer must be reimbursements of advances made as part of the regular and usual custom of the taxpayer's business or profession. WAC 458-20-111. Both sides have stipulated that the repayments by clients for the taxpayer's payments of associate-firm fees were made in the regular and usual custom of the taxpayer's profession.

### II. Repayments involve services that the taxpayer did not or could not render.

The second requirement for Rule 111 exclusion is also satisfied in that the payments made by the taxpayer to associate firms are for services that the taxpayer does not or cannot render. Both parties have stipulated that the services rendered by the Washington, D.C., patent attorneys and foreign patent professionals could not have been provided by the taxpayer.

The fact that the taxpayer is not viewed as the renderer of the services provided by an associate firm is underscored by the law regarding the liability of referring law firms for the malpractice of associate law firms to which work is referred. Referring law firms are neither liable to their clients for such malpractice nor can they recover from the engaged law firm for such malpractice. In short, an independent attorney–client relationship exists between the associate firm and the taxpayer's client, to which the taxpayer is not a party. Therefore, when the taxpayer is reimbursed for paying associate firms, these reimbursements are within the letter and spirit of the Rule 111 exclusion.

### III. Taxpayer is not liable for the initial payments.

The final requirement of Rule 111 exclusion is also satisfied because the taxpayer is not liable for paying the associate firms except as the *agent* of the client. An attorney is not liable for charges incurred by the attorney on behalf of his client unless the attorney assumes such liabil-

ity. Annot., 15 A.L.R.3d 531, 536 (1967). This includes charges owed agents hired by the attorney to provide services for the client. *Sansom Reporting, Inc. v. Feiner, Klaris & Curtis,* 69 Misc. 2d 215, 329 N.Y.S.2d 984 (1971). This follows from the general agency rule stated in Restatement (Second) of Agency § 79, comment *a* at 200.

> *a.* Whether or not the agent is authorized to employ agents of the principal depends upon the manifestations of the principal in light of the circumstances, including the usages of the business and of the parties inter se. The agents so employed are the agents of the principal and not of the employing agent, *who is not responsible to them for their compensation unless he so manifests,* and is no more responsible for their conduct to third persons or to the principal than he is for the conduct of other agents of the principal, unless he is negligent in their selection.

(Italics ours.)

Here, both parties have stipulated that the associate firms understand that they are working for the named client with respect to the work performed. Consequently, the taxpayer is not legally liable to pay the associate firms.

> IV. Reimbursement of registration fees is excludable from the taxpayer's gross income.

Certain amounts included in the assessment were amounts paid to foreign governments to file, register, or maintain patents in those jurisdictions. Such fees are excludable under Rules 111 and 207 (WAC 458–20–111 and WAC 458–20–207).[1]

---

[1] WAC 458–20–207 states:

"Court costs paid by a taxpayer is a business expense and may not be deducted from the Gross Amount reported as the measure of tax under the business and occupation tax.

"Court costs paid by a taxpayer and recovered in an action at law may be excluded from the Gross Amount reported as the measure of tax under the business and occupation tax. The recovery of such costs is construed to be a return of capital invested rather than income.

"Court costs advanced by an attorney for the account of his client may be excluded from the attorney's income upon the reimbursement by the client or recovery of such amount in an action at law."

Payments of such fees by the taxpayer are clearly "advances" within the meaning of Rule 111 because the taxpayer has no liability for them except to the extent it has promised to advance these fees. Further, these patent filing, issuance, and maintenance fees are in the nature of court costs which are expressly excluded from the income of an attorney upon reimbursement by the client or recovery of the amount in an action at law under Rules 111 and 207. After giving other examples, the pertinent portion of Rule 111 states as follows:

> *Likewise, where an attorney pays filing fees* or court costs in any litigation, *such fees* and costs are paid as agent for the client and *should be excluded from the gross income of the attorney.*

(Italics ours.) This example illustrates that Rule 111 was intended to exclude from gross income the reimbursement of advances to pay costs such as the present patent filing, issuance, and maintenance fees.

The State of Washington, through the promulgation of Rule 111, has chosen to exempt reimbursements from gross income. The Washington Supreme Court has described Rule 111 as follows:

> If a taxpayer performs services as an agent rather than an independent contractor, and receives a reimbursement from the principal for the funds expended, then WAC 458–20–111 excludes the reimbursement from taxation.

*John H. Sellen Constr. Co. v. Department of Rev.,* 87 Wn.2d 878, 884–85, 558 P.2d 1342 (1976).

> Fees for services added on draftsman's bills are part of taxpayer's gross income and are subject to the business and occupation tax.

The parties' Stipulation of Facts pertaining to draftsman's bills provides:

> 26. Only with respect to draftsman's bills, the taxpayer pays those bills and then seeks payment from the taxpayer's clients for the amount of the bills plus $1.00 per hour of draftsman time in addition in order to compensate the taxpayer for its *costs* of dealing with the drafts-

man and the client on drafting matters.
(Italics ours.)

Rule 111, in pertinent part, provides for taxation of fees in the following language:

On the other hand, no charge which represents an advance payment on the purchase price of an article or a cost of doing or obtaining business, even though such charge is made as a separate item, will be construed as an advance or reimbursement. Money so received constitutes a part of gross sales or gross income of the business, as the case may be.

It is clear that services that the taxpayer adds on draftsman's bills are not "costs" but are fees and should be included within the taxpayer's gross receipts for purposes of assessing business and occupation taxes.

### CONCLUSION

We hold that the repayments of amounts paid by the taxpayer on behalf of his clients, associate firms, draftsmen and governmental agencies are properly excluded from the taxpayer's gross income for the purpose of computing the taxpayer's business and occupation tax. However, the taxpayer's add–on charges for services on draftsmen's bills are not costs but part of his gross receipts, and he must pay business and occupation tax on such receipts.

It appears that the Department of Revenue may have stipulated itself out of court on some of the claimed deductions. On a different record we may have reached a different result on some items.

Reverse and remand to the trial court for entry of judgment in accordance with the provisions of this opinion.

ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DIMMICK, and PEARSON, JJ., concur.

BRACHTENBACH, C.J. (concurring)—I agree with the result reached by the majority. I note, however, that the opinion misstates the scope of the tax exclusion embodied in Rule 207 (WAC 458–20–207). This rule excludes "*[C]ourt* costs

advanced by an attorney . . . from the attorney's income upon the reimbursement by the client or recovery of such amount in an action at law." (Italics mine.) Thus, this exclusion, which like all other exclusions must be narrowly construed, is limited to court costs accrued through litigation. It does not include, contrary to the majority's assertion, costs of filing, registering or maintaining patents. To include such costs is contrary to the general rules of judicial construction, and it also opens the door to other exclusions by analogy. Moreover, it is not necessary to draw such an analogy to reach the correct result. For these reasons, I do not join in the portion of the opinion that discusses Rule 207.

Nonetheless, because such patent costs are "advances" within the meaning of Rule 111, the majority properly excludes them from the gross income of the attorney. I concur, therefore, in the result.

STAFFORD, J., concurs with BRACHTENBACH, C.J.