KEYSTONE AUTO LEASING, INC.

v.

John H. NORBERG, Tax Administrator.

JONI AUTO RENTALS, INC. d/b/a
Thrifty Rent-A-Car Systems

v.

John H. NORBERG, Tax Administrator.

Nos. 82–266–M.P., 83–279–M.P.

Supreme Court of Rhode Island.

Jan. 16, 1985.

John G. Hines (Iannuccillo & Hines Inc.), Dennis H. Esposito (Vrana Cunha & Esposito), Providence, for petitioner.

Perry Shatkin, Chief Legal Officer/Charles E. Goldkamp, Legal Officer, Div./Taxation, Dennis J. Roberts II, Atty. Gen., Donald G. Elbert, Jr., Asst. Atty. Gen., Providence, for respondent.

## OPINION

SHEA, Justice.

These matters are before the court following the consolidation of two petitions for writ of certiorari. The petitioners are Joni Auto Rentals, Inc., and Keystone Auto Leasing, Inc. (petitioners), two Rhode Island corporations independently engaged in the business of automobile rentals. The issues raised in these petitions are identical: whether the Rhode Island sales-and-use tax applies to automobile leases to employees of the United States government. The petitioners seek review of District Court judgments affirming decisions of the tax administrator assessing sales-and-use taxes against each corporation. The facts are undisputed in each case—only the dates of entry of judgment and the total amounts of judgment differ. We affirm the judgments entered by the District Court in each case.

As a result of individual audits, deficiency assessments were levied by the tax administrator against gross receipts arising out of automobile rentals and purchases of gasoline and personal accident insurance by employees of the federal government.

The petitioners argue that the transactions in question are exempt from taxation because the rentals and purchases were incidental to their contractual obligations with the United States government. The existence and terms of these contracts are not disputed. The petitioners were obligated thereunder to have available a fixed number of automobiles for lease to employees of the federal government who were on official business. During the period of these audits, rentals and gasoline and in-surance purchases were made, but petitioner failed to charge a state sales tax. Employees of the federal government paid for the rentals in cash or with their personal credit cards and were reimbursed by the government on proof of payment.

The tax administrator argues that this method of payment places the transactions in question outside the governmental-immunity doctrine and requires the imposition of sales-and-use tax on their gross receipts. The petitioners contend that the fact that the employees paid for the cars they rented with cash or personal credit cards was immaterial because the government's credit, not the employees', was actually being pledged in each instance and that, as such, the transactions were exempt from taxation under Federal and State Constitutions and the rules and regulations promulgated by the tax administrator. The District Court rejected petitioners' argument and concluded that the state sales tax was constitutionally applied and that the refueling and insurance charges were part of the sales price and properly included in the measure of tax.

We must examine the issues in light of the tests established by the United States Supreme Court with respect to governmental tax immunity. The seminal case of *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), first established the principle of constitutional immunity of the federal government and its instrumentalities from taxation by the states under the supremacy clause of Article VI of the United States Constitution. This broad expression of immunity is not without limitation, however, and must be considered in relation to the correlative taxing power constitutionally reserved to the states under our dual system of government. Through a succession of decisions, the United States Supreme Court has recognized limitations on the immunity doctrine. *See Washington v. United States*, 460 U.S. 536, 103

S.Ct. 1344, 75 L.Ed.2d 264 (1983) (where the Court upheld a state tax on sales of materials to federal contractors); *United States v. New Mexico*, 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (where the Court upheld a tax on federal contractor/purchasers even though the property purchased passed directly to the government and was actually paid for with drafts drawn on funds of the United States Treasury); *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977) (where the Court held that a tax was validly imposed on federal employees with possessory interests in federal property); *Sullivan v. United States*, 395 U.S. 169, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969) (where the Court upheld the imposition of a sales tax on the purchase of an automobile by a serviceman stationed in Connecticut); *Graves v. New York ex rel. O'Keefe*, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939) (where the Court upheld the right of the states to impose an income tax on the salaries of federal employees).

■■■ What has emerged from these decisions is a "legal incidence" test that requires a determination of who is the "purchaser" upon whom the ultimate burden of the tax will fall. As long as a state makes no claim of right to collection from the federal government or its instrumentalities, a state may impose a tax on those entities dealing for their own purposes with the federal government. *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958). Moreover, legal incidence also depends on the party to whom the state requires that the tax be passed. *United States v. Tax Commission of Mississippi*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975), illustrates this pass-on test and is particularly applicable to the facts of the instant case. "[W]here a State requires that its sales tax be passed on to the purchaser and be collected by the vendor from him, this establishes as a matter of [federal] law that the legal incidence of

the tax falls upon the purchaser." *Id.* at 608, 95 S.Ct. at 1878, 44 L.Ed.2d at 413.

The State of Rhode Island requires that all gross receipts be subject to sales tax unless the taxpayer can prove an exemption. G.L.1956 (1980 Reenactment) § 44–18–25. In the present situation, petitioners contend that they are not obligated to pay the taxes under § 44–18–31, which provides:

> "There shall be exempted from the computation of the amount of the sales tax the gross receipts from the sale of any tangible personal property to the United States, its agencies and instrumentalities."

The tax administrator agrees that the individual states may not impose a tax, the legal incidence of which falls directly on the federal government. Here, however, he takes the position that since the employees paid the lease charges themselves, the legal incidence of the tax is upon them, not on the United States government. This is so, the administrator argues, even in situations in which the economic burden of the tax ultimately falls on the federal government. This argument is supported by decisions of the United States Supreme Court. In *Alabama v. King & Boozer*, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941); *accord Curry v. United States*, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9 (1941), a contract obligated the federal government to reimburse its contractor for purchases but did not purport to obligate the federal government to pay the vendor for whatever materials the contractor selected on the government's behalf. Although it was found in that case that economic burden, in and of itself, was not the determining factor in deciding whether a sales and use tax was constitutional, the Court concluded that the government was not a purchaser within the meaning of Alabama law and therefore was not legally obligated to pay the tax. (*Curry v. United States*, 314 U.S. 14, 62 S.Ct. 48, 86

L.Ed. 9 (1941) was a companion case to *Alabama v. King & Boozer, supra.*)

In our view, in situations in which federal employees lease automobiles and pay with cash or personal credit cards, the legal incidence of the tax is on the employees and not on the federal government. We conclude, therefore, that petitioners are not immune from state taxation and that the rentals in question constituted a taxable event.

The only remaining issue involves the charges for gasoline and optional personal accident insurance. As part of the lease transaction, all vehicles must be returned with a full tank of fuel. If the lessee uses petitioners' gasoline pumps for this purpose, an additional charge is included on the bill. Additionally, optional personal accident insurance is available to lessees, and premiums therefor are also added to the bill. As with the automobile rental, no sales taxes were collected by taxpayer on these purchases.

The petitioners contend that the charge for refueling is exempt under the provisions of G.L.1956 (1980 Reenactment) § 44–18–30(G) and that the purchase of an insurance policy is exempt under the rules and regulations of the tax administrator. Under these circumstances, petitioners argue, expenditures for gasoline and insurance should be exempted from the total gross receipts. The tax administrator concedes that under ordinary circumstances these purchases would be exempt under the cited statute and rules. What takes these cases out of the statutory exemption is the character of the transaction. Here, the sale of gasoline and personal insurance is part of one transaction—the lease of the automobile. The administrator relies on § 44–18–12, as amended by P.L.1981, ch. 151, § 1, and subdivision A thereof for the the proposition that the ancillary sales were a service that became part of the total sales price subject to taxation. Section 44–18–12(A) provides in pertinent part:

" 'Sale price' means the total amount for which tangible personal property is sold or leased or rented * * *.

(A.) Any services that are a part of the sale, valued in money, whether paid in money or otherwise."

The District Court judge was of the opinion that the automobile rental, fuel, and insurance constituted one transaction taxable under § 44–18–18. That section imposes a tax upon sales at retail measured by the gross receipts of the retailer from such sales. Section 44–18–13 defines gross receipts as "the total amount of the sale price * * * of the retail sales of retailers." He concluded that the total amount properly included the price of gasoline and insurance.

This issue was addressed in *The Coachman, Inc. v. Norberg,* 121 R.I. 316, 397 A.2d 1320 (1979). The transaction there involved a contract with a band made by the restaurant, which contract was paid for initially by the restaurant and passed on to the patron in the restaurant's final bill for a catered affair. We held in that case that the booking was a service provided by the restaurant as part of a single transaction and that the sum collected became part of the gross receipts and was includable in the measure of tax. Similarly, the sale of gasoline and the providing of personal accident insurance are services by the rental agencies forming part of one transaction.

For the reasons stated, the petitions for certiorari are denied, the writs heretofore issued are quashed, and the papers in the cases are remanded to the District Court with our decision endorsed thereon.