STAPLETON, Circuit Judge,
concurring in part and dissenting in part:
As the court acknowledges, it is “beyond cavil that the attorney-client relationship is an agent-principal relationship.” (Majority Op. at 853.) Nevertheless, the court declares that the “attorneys [in this case], and not the clients, were undeniably the direct purchasers of the photocopies.” (Majority Op. at 852.) The first of these inconsistent propositions is clearly correct; it necessarily follows that the second is not. Because the photocopies were purchased from the defendant copy services by the attorneys, as agents for their disclosed client-principals, it is the clients, and not the attorneys, who purchased them. For this reason, I would reverse the judgment of the district court and remand for further proceedings on all of the plaintiffs’ claims.
I.
In part III-B, the court concludes that: (1) the Supreme Court in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) [hereinafter AGC ], neither overruled Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), nor limited its application; (2) “AGC incorporates, rather than repudiates, the principles of Illinois Brick,” (Majority Op. at 850); (3) AGC and Illinois Brick address two distinct aspects of antitrust standing; and (4) in order to escape summary judgment, the plaintiffs must establish that they and not their attorneys are the direct purchasers of the photocopies. I agree.
Whether the plaintiffs are direct purchasers of the copies, however, depends on whether the attorneys are agents for the plaintiffs with respect to the purchase of the copies. If the attorneys bought the copies as agents for the plaintiffs, then the plaintiffs are the direct purchasers of the copies. If, on the other hand, the attorneys purchased the copies on their own behalves, then the plaintiffs are indirect purchasers of the copies. When the applicable law is applied to the facts reflected in the summary judgment record, the conclusion is inescapable that the attorneys purchased the copies for their clients and that the clients are the direct purchasers.
A.
In Pennsylvania, the elements of agency are “the manifestation by the principal that the agent shall act for him, the agent’s acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.” Scott v. Purcell, 490 Pa. 109, 415 A2d 56, 60 (1980) (quoting Restatement (Second) of Agency § 1, Comment b (1958)). When a lawyer undertakes to represent .a client, he consents to the client’s having control of the representation even though he may be expected to exercise professional judgment with respect to the means of pursuing the objectives of the representation. Pennsylvania Rules of Professional Conduct 1.2(a). For this reason, the attorney-client relationship, as the court acknowledges, is generally regarded as an agency relationship. As a principal, the client is bound by the actions of the attorney in the course of the representation. As an *858 agent, the attorney, like other agents, is a fiduciary and owes to his client-principal a duty of care, obedience, and loyalty. Restatement (Second) of Agency §§ 377-398; e.g., Pennsylvania Rules of Professional Conduct 1.1, 1.2, 1.3, 1.15. In particular, an attorney who obtains tangible property in the course of carrying out the agency owes to his client-principal a duty to exercise reasonable care in its protection, to use it only in accordance with the directions of the principal and for his benefit, and to surrender it upon demand on the termination of the agency. Restatement (Second) of Agency § 422; Pennsylvania Rules of Professional Conduct 1.15,1.16(d). While the attorney may have a lien to secure any unpaid compensation, it is only a lien and any tangible property obtained or created in the course of the representation belongs to the client-principal. Pennsylvania Rules of Professional Conduct 1.16(d).
The record here reflects typical attorney-client relationships between the plaintiffs and their attorneys. The attorneys agreed to represent the plaintiffs in their personal injury suits and thus to obtain on their behalf the goods and services necessary to prosecute those suits.[1] Although the attorneys, as permitted by Pennsylvania’s Rules of Professional Conduct,[2] are advancing to their clients the expenses associated with litigating their cases, this does not, in my view, alter the relationship between the attorneys and their clients or between the clients and third parties with whom the attorneys deal on the clients’ behalf. By contrast, nothing in the record suggests that the attorneys are purchasing the records on their own behalves in the hope of making a profit on resales to their clients.
The attorneys’ role as agent is controlling here because, unless otherwise agreed, an agent for a disclosed principal is not a party to a contract that the agent enters on behalf of the principal. Restatement (Second) of Agency § 320 (followed in Revere Press, Inc. v. Blumberg, 431 Pa. 370, 246 A.2d 407, 409 (1968)). Thus, unless it is agreed that such an agent is to be a party to a contract, the contract is, in effect, a contract between the principal and the third party. Restatement (Second) of Agency § 292 (followed in Hillbrook Apartments, Inc. v. Nyce Crete Co., 237 Pa.Super. 565, 352 A.2d 148, 154 (1975)). Accordingly, where, as here, an attorney purchases photocopies of records and it is understood by the seller that they are being purchased on behalf of his client, the client and not the attorney is the purchaser. My review of Pennsylvania case law convinces me that Pennsylvania subscribes to these basic principles of agency in the context of the attorney-client relationship.
In Moore v. Porter, 13 Serg. & R. 100 (Pa.1825), the Supreme Court of Pennsylvania addressed the remedies available to a prothonotary to collect fees incurred by litigants. The court held that “[t]he party for whom the services are done, is responsible for the fees, and to him is the [prothonotary] to look.... The fees are not chargeable to the attorney of the party for whom the services are done, unless he has become security for the costs.” Id. at 101.
Pessano v. Eyre, 13 Pa.Super. 157 (1900), involved a suit by an expert witness against the attorney that hired him in pursuit of his client’s claim. The superior court held that “[i]f ... there was no express direct undertaking on the part of the [attorney] to pay what was due to the [expert witness], that is the end of the matter,” because the expert witness could not collect from the attorney. Id. at 163. The attorney would be liable to the expert witness only if the attorney *859 “ma[de] himself liable by a special promise.” Id.[3]
In Messenger Publishing Co. v. Walkinshaw, 102 Pa.Super. 445, 157 A. 18 (1931), the superior court held that where an attorney orders copies of “a paper book used on appeal” from a publishing company, the attorney does so in his capacity as an agent for his client. As the court explained:
When an attorney has been acting for the defendant up to judgment and the client acts with him in the taking of an appeal and the attorney orders the printing of the paper-books required by the rules of the appellate court, it is to be presumed that he is acting under authority from his client. At least, the ordering of the paper-books is within the scope of the attorney’s authority.
Id., 157 A. at 19 (quoting Huntzinger v. Devlin, 80 Pa.Super. Ct. 187 (1922)). Thus, the publishing company, the court held, could not collect from the attorney.
Based on Moore, Pessano, Walkinshaiv, and Huntzinger, I conclude that in Pennsylvania, “when an attorney contracts with a third party for the benefit of a client for goods or services to be used in connection with the attorney’s representation of a particular client and the third party is aware of these facts, the attorney is not liable on the contract unless he either expressly or impliedly assumes some type of special liability.” Eppler, Guerin & Turner, Inc. v. Kasmir, 685 S.W.2d 737, 738 (Tex.Ct.App.1985).[4] Numerous jurisdictions agree. See Christensen, O’Connor, Garrison & Havelka v. State of Washington, Department of Revenue, 97 Wash.2d 764, 649 P.2d 839, 843 (1982); Hasbrouck v. Krsul, 168 Mont. 270, 541 P.2d 1197, 1198 (1975); In re May, 27 N.Y.2d 529, 312 N.Y.S.2d 999, 1000, 261 N.E.2d 109, 110 (1970); Kates v. Millheiser, 569 So.2d 1357, 1357 (Fla.Dist.Ct.App.1990); Free v. Wilmar J. Helric Co., 70 Or.App. 40, 688 P.2d 117, 119-20 (1984); Weeden Engineering Corp. v. Hale, 435 So.2d 1158, 1160 (La.Ct.App.1983); Petrando v. Barry, 4 Ill.App.2d 319, 124 N.E.2d 85, 87 (1955); 7A C.J.S. Attorney and Client § 140 (1980) (“In the absence of assumption of personal liability, an attorney is generally not liable for work done by third persons in connection with his representation of a client.”).
Under this case law, the plaintiff-clients, and not their attorneys, are responsible for the purchase price of the photocopies. Moreover, the record reflects that they have had to pay in the past[5] and will continue to have to pay in the future[6] the prices that the copy services choose to charge. Assuming that an antitrust violation has affected the prices that the copy services charge, I fail to understand how there could be a more direct causal relationship between that violation and the plaintiffs’ alleged injuries.
B.
The court concludes that because the attorneys are independent contractors with respect to the purchase of the copies, the attor *860 neys, rather than the plaintiffs, are the direct purchasers of the copies. The issue of whether the attorneys are independent contractors is simply not relevant here, however. Independent contractor status is relevant only to determine the extent of a person’s tort liability to third parties. According to the law of respondeat superior, where B acts for the benefit of A and commits a tort and injures C, if B is an independent contractor, then C cannot recover from A regardless of whether B is A’s agent. If, on the other hand, B is a servant of A, then C can recover from A regardless of whether B is A’s agent. Thus, even if it be true that the plaintiffs’ attorneys are independent contractors, all this tells us is that the plaintiffs are not responsible to third parties for torts committed by the attorneys. It tells us nothing about whether the attorneys, as their agents, purchased the copies on their behalves. See Restatement (Second) of Agency §§ 2, 219-220.
II.
Because antitrust standing principles apply equally to allegations of RICO violations, I would conclude, for the foregoing reasons, that the plaintiffs may go forward on their RICO damage claims. Because I agree with the court that the plaintiffs have standing to prosecute them claim for injunctive relief under Section 16 of the Clayton Act, I would remand for further proceedings on all of plaintiffs’ claims.

. Of course, it is understood that an attorney obtains goods used generally in his practice, such as office supplies, on his own behalf. Office supplies are analogous to the paint purchased by a housepainter or the gasoline purchased by a taxicab driver in the court's hypotheticals. (See Majority Op. at 852 n. 15, 853 n. 17.)

. Pennsylvania's Rules of Professional Conduct 1.8(e) provides:
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

.The court concludes that in Pessano v. Byre, 13 Pa.Super. 157 (1900), the superior court "had difficulty with this issue.” (Majority Op. at 854 n. 18.) I am not sure of which difficulty the court speaks. On the contrary, the superior court in Pessano plainly articulates the principle that while an agent is not generally liable on a contract made on behalf of a disclosed principal, "even where the agency is known, an agent ... may render himself liable by an express undertaking.” Pennsylvania R. Co. v. Gallagher, 174 Pa.Super. 462, 101 A.2d 401, 402 (1953). In the record in this case, there is no evidence of an express undertaking of liability by the attorneys. Moreover, the fact that the attorney may commit himself to be responsible to the seller for the purchase price does not mean that the client is not also responsible or that any property purchased in the sale on behalf of the client does not belong to the client.

. The court intimates that Pennsylvania case law may be inapposite because no Pennsylvania case discusses the agency issue in a federal antitrust context and none address the direct purchaser rule. (See Majority Op. at 854 n. 18.) In my view, this distinction is not significant because the agency status of the attorneys is purely a question of state law. The court does not suggest a reason why the agency question may turn out differently in the federal antitrust context, and I perceive none.

. As the court acknowledges in footnote 6, plaintiffs Tomasetti and Hoffman have covered their attorneys' advances.

. Even if one credits the testimony that F & S chooses not to press its contract right to reimbursement in unsuccessful cases, it is clear that the clients will wind up paying the purchase price of the photocopies in all successful cases.