C. THOMAS GUALTIERI v. WILLIAM A. BURLESON

No. 8615DC722

(Filed 17 March 1987)

1. **Contracts § 27— attorney's contract with expert witness—sufficiency of evidence—no contract between client and expert witness**

   In an action by an expert witness to recover for services rendered in connection with a lawsuit which was handled by defendant lawyer in the District of Columbia, evidence was sufficient to support the judgment against defendant where it tended to show that defendant personally contacted plaintiff at his office and requested that plaintiff render expert medical services, including testifying at trial if necessary; plaintiff agreed to and did perform the requested services; and defendant personally contracted to pay plaintiff for the services rendered. Moreover, the fact that defendant identified himself as a lawyer with a disabled client was insufficient to establish that the client and not defendant was the one contracting to pay for plaintiff's services.

2. **Appeal and Error § 6.3; Process § 9.1— nonresident defendant—in personam jurisdiction—minimum contacts—failure to appeal from court's order determining jurisdiction**

   Defendant could not properly raise the issue as to whether the trial court had jurisdiction over his person where defendant did not appeal from the trial

judge's order denying his motion to dismiss on the ground of lack of *in personam* jurisdiction; nevertheless, the court did properly exercise jurisdiction over defendant where the most significant services rendered by plaintiff pursuant to his contract with defendant took place in plaintiff's Chapel Hill office, and defendant's contacts with this state, including contacting plaintiff in North Carolina, soliciting him to perform professional services in North Carolina, carrying the name of a North Carolina lawyer on his letterhead, and filing a counterclaim in this case, were sufficient so that requiring him to defend the case here was not in violation of due process. N.C.G.S. § 1-75.4(5)(a) and (b); N.C.G.S. §§ 1-277(b), 1-278, 1-279.

APPEAL by defendant from *Hunt, Judge*. Order entered 18 February 1986 in District Court, CHATHAM County. Heard in the Court of Appeals 11 December 1986.

Defendant, a Washington, D. C. lawyer and resident, appeals from a verdict and judgment in favor of the plaintiff, a Chapel Hill, N. C. neuropsychiatrist, for services rendered in connection with a lawsuit that defendant handled in the District of Columbia. That suit, upon behalf of Shirley and Calvin Kirby, was against the United States and its purpose was to recover damages that allegedly resulted from Shirley Kirby being vaccinated for swine flu. In this case, begun in February 1984, plaintiff alleged that defendant hired him to render expert services in connection with the Washington case and owed him $2,825 for the services so rendered. Defendant moved to dismiss on the ground that he was not subject to the court's jurisdiction; and in answering the complaint he denied plaintiff's principal allegations and filed a purported counterclaim against Calvin and Shirley Kirby that was later dismissed in which he alleged that plaintiff was hired by the Kirbys, rather than him. The jurisdictional motion, heard on 25 September 1985, was dismissed by Judge Peele upon findings that a substantial part of the services defendant hired plaintiff to perform were performed in North Carolina. In January 1986 the case was tried without a jury by Judge Hunt, who rendered verdict and judgment for the plaintiff in the amount sued for. Defendant presented no evidence and his appeal from the judgment questions only the sufficiency of the evidence, which in pertinent part was as follows:

In 1981 defendant was representing Shirley Kirby and her husband in a case that was pending in the courts of the District of Columbia. Five years earlier Mrs. Kirby, suffering what apparent-

ly was a temporary psychotic disorder, was vaccinated for swine flu and in the months that followed her mental condition worsened, rather than improved, and the nerves serving her lower body became inflamed and lost their utility, and she has been paralyzed from the waist down ever since. The major issue in that case was whether Mrs. Kirby's paralysis and worsened mental condition were caused by the swine flu vaccine. Dr. Gualtieri is a recognized authority on the conditions that Mrs. Kirby had and in March 1981 defendant telephoned him from Washington, told him generally about Mrs. Kirby's case and condition and stated that he needed an expert opinion and witness as to the relationship, if any, between the swine flu vaccination and Mrs. Kirby's declining mental and neurological condition. Plaintiff told defendant he usually charged $100 per hour and $1,500 per day for work of that kind and that before he could form an opinion about Mrs. Kirby's situation he would have to examine her and analyze her medical records. Defendant asked him if payment of his charges could be delayed until the case was over, and plaintiff said it could if his expenses were paid as incurred. Defendant told plaintiff that he wanted him to examine Mrs. Kirby, evaluate her medical records and condition, report whether her neurological or mental condition had been contributed to or aggravated by the swine flu vaccination, and testify at the trial if appropriate and necessary; and plaintiff said that he would do the work requested. During this initial telephone conversation between plaintiff and defendant nothing was said about plaintiff being hired upon behalf of the Kirbys instead of by defendant personally; or about plaintiff's charges being paid by the Kirbys; or about the defendant not being personally responsible for plaintiff's charges; or about plaintiff's payment being contingent upon the case being won; and at no time has plaintiff ever conversed or corresponded with the Kirbys either about them hiring him to work on their case or about paying him for it. Shortly after the telephone conversation defendant sent Mrs. Kirby's medical and hospital records to plaintiff, who analyzed them in his office at Chapel Hill. In April 1981, at defendant's request, plaintiff flew to Washington, talked with defendant at his law office, visited Mrs. Kirby in a District of Columbia hospital and gave her a physical and neurological examination, after which he went back to defendant's office and received defendant's check in payment of his travel expense. When plaintiff got back to his office in Chapel Hill he

spent several hours preparing a report about Mrs. Kirby's disabled condition, a report that expressed and supported the opinion that her condition was causally related to the swine flu vaccination. When the report was completed on 28 April 1981 plaintiff mailed it to defendant, along with a bill for $2,000. In December 1981 at defendant's request plaintiff went back to Washington, re-examined Mrs. Kirby, and testified in the case by deposition. After the deposition transcript was sent to plaintiff some weeks later he reviewed and corrected it in his Chapel Hill office and mailed it to defendant, along with an additional bill for $1,700. The Kirby case, tried in July 1982, ended with a judgment for the United States, but incident thereto $875 of plaintiff's charges were paid by the government. Plaintiff wrote letters to defendant in August, November and December 1982 and May 1983 requesting payment of the $2,825 balance that he claimed; but defendant made no payment and mailed only one letter in response on 1 December 1982 in which he first claimed that he was not responsible for plaintiff's charges.

*James T. Bryan, III and Chris Kremer for plaintiff appellee.*

*Northen, Blue, Little, Rooks, Thibaut & Anderson, by David M. Rooks, III, for defendant appellant.*

PHILLIPS, Judge.

[1] Defendant's assignments of error contending that the evidence is insufficient to support the judgment against him are without merit and we overrule them. The court's decisive findings of fact — to the effect that plaintiff *agreed with defendant* to provide the services involved and that plaintiff told defendant he would charge *him* the per diem and hourly fees above stated — are amply supported by evidence, and clearly support the court's conclusion that defendant personally contracted to pay plaintiff for the services admittedly rendered in the Kirby case. Defendant's argument is not that the court's findings have no evidentiary foundation; it is, instead, that he is not liable because he "identified himself as an attorney representing Mrs. Kirby," thereby making "it clear that he acted in a representative capacity for a disclosed principal." This argument is rejected. Trial lawyers are always making contracts with court reporters, investigators, and experts of various kinds and the evidence clearly indicates de-

Gualtieri v. Burleson

fendant so contracted in this instance. Contrary to defendant's argument, there is no inhibition in the law against a lawyer contracting to pay for services needed in a case he is handling. Rule 5.3 of the Rules of Professional Conduct of The North Carolina State Bar authorizes a lawyer to advance or guarantee litigation expenses for his clients, provided the client remains ultimately liable to him for such expenses. This proviso was adopted, no doubt, because litigation is usually conducted, managed and prepared by lawyers, not clients; knowing when court reporters, investigators and expert witnesses are needed and obtaining them is part of a trial lawyer's job; and lawyers, not clients, usually select, contact, negotiate with, engage and pay such persons. Whether payment is made with the lawyer's money or the client's, or whether the client has agreed to reimburse the lawyer, is of no concern to the recipient; but rare, indeed, is the expert, medical or otherwise, who helps in the preparation or trial of a lawsuit without being assured by someone apparently capable of paying that he will be paid. All these things are known by trial lawyers, which is why they usually assure experts vital to their cases that they will be paid and make the best arrangements they can with the clients to repay them. Furthermore, nothing in the evidence suggests that Mrs. Kirby was known to plaintiff or anyone else as a hirer of expert services; or indeed that she had ever hired any such services or authorized defendant to do so upon her credit. Thus, identifying himself as a lawyer with a disabled client, all that defendant did according to the evidence, was not sufficient in our opinion to establish that he was not the one contracting to pay for plaintiff's services. For when a lawyer hiring an expert to help on a case says or does nothing to indicate that the obligation to pay is not his, the expert can reasonably assume, it seems to us, that the lawyer is acting openly and in good faith, rather than evasively, and that he is the contracting party, rather than a stranger he has had no contact with.

[2]  Defendant also assigns as error Judge Peele's order denying his motion to dismiss the action on the ground that the court has no jurisdiction over his person. Though not mentioned in the brief of either party, defendant has no right to present this contention because he did not appeal from Judge Peele's order; he only appealed from the judgment that was entered several months later.

The first indispensable step in appealing from a judgment or order, as G.S. 1-279 makes plain, is to give notice of appeal in the manner provided and within the time stated therein. Defendant did not take that first step and thus lost his right to contest the validity of that order because the statutory requirements are jurisdictional. *Booth v. Utica Mutual Insurance Co.*, 308 N.C. 187, 301 S.E. 2d 98 (1983). Nor is the order's validity reviewable under G.S. 1-278 because he did appeal from the judgment. While G.S. 1-278 does provide that interlocutory orders affecting a judgment appealed from can be reviewed with the judgment, that statute applies only to interlocutory orders that are not appealable, *Veazey v. City of Durham*, 231 N.C. 357, 57 S.E. 2d 377 (1950); and the order upholding the court's jurisdiction over defendant's person was immediately appealable under the express provisions of G.S. 1-277(b). *Holt v. Holt*, 41 N.C. App. 344, 255 S.E. 2d 407 (1979). This does not mean, of course, that defendant had to pursue an appeal from the order at that time; he could have preserved his exception for determination later as G.S. 1-277(b) permits. But it does mean that having the right to appeal he was obliged to exercise that right, if at all, by first giving timely notice of appeal in accord with the provisions of G.S. 1-279.

Even so, it is quite clear that under the two-step determination that must be made when the exercise of *in personam* jurisdiction over a non-resident defendant is challenged, *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E. 2d 629 (1977), that the trial court had jurisdiction over defendant's person, and his contention to the contrary is overruled. First, we determine that there is statutory authority for exercising *in personam* jurisdiction over defendant in this case. Subparagraphs (a) and (b) of G.S. 1-75.4(5) give the courts of this state personal jurisdiction over a foreign defendant who contracts to pay for services, any substantial part of which are performed in this state; and the most significant services that plaintiff performed for the defendant in Mrs. Kirby's case were to analyze her medical records, arrive at an opinion concerning her condition, and report his findings and opinion to defendant, all of which were done in his office at Chapel Hill. Second, we determine that defendant's contacts with this state have been enough that requiring him to defend the case here is not incompatible with traditional notions of fairness inherent in the concept of due process under *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 2d 95, 66 S.Ct. 154 (1945). In addition to defendant contacting plaintiff in this state and soliciting him to perform professional services here, defendant also carried the name and address of a North Carolina lawyer on his letterhead, thereby indicating an ability and willingness to do business in this state through that lawyer; he asked the court, through the counterclaim filed in this case, to exercise its jurisdiction over the non-resident Kirbys; he owned land in this state when the suit was filed and had for several years prior thereto. Under all the circumstances recorded there is nothing unfair about requiring defendant to defend the case in our courts; for the unfairness would be in requiring plaintiff to sue defendant in Washington.

Affirmed.

Judges ARNOLD and ORR concur.