[No. 23265-7-I. Division One. December 11, 1989.]

HARLEY COPP, *Respondent*, v. HOWARD B. BRESKIN, ET AL, *Appellants*.

*Jeffrey S. Laws* and *Breskin & Robbins,* for appellants.

*Gerald G. Day* and *Day, Herman & Recor,* for respondent.

WEBSTER, J.—Breskin & Robbins, a law firm, appeals a summary judgment in favor of Harley Copp, an expert witness hired by the firm on behalf of a client. Copp successfully claimed $14,789 for expert services.

### FACTS

Breskin & Robbins advised Copp before hiring him that fees "were being paid, and were to be paid" by the client. Copp says he would never accept employment if an attorney's obligation were dependent on reimbursement from a client. He made this policy known.

Breskin & Robbins concedes by way of deposition that, absent an agreement to the contrary, a provider of litigation services can expect an attorney in King County to pay the provider's bill whether or not the client reimburses the attorney. Copp, a California resident, is aware of a similar custom.

Copp sent Breskin & Robbins an initial bill which the firm paid with a "trust check" for $1,424. An accompanying letter assured Copp that any future charges would be paid within 30 days of his testimony. Breskin & Robbins claims it gave the assurance on behalf of the client and did not intend a guaranty. The client paid some of Copp's bills directly while he was in town for the trial. After trial, Copp sent Breskin & Robbins a final bill. He said he expected payment within 30 days, as previously agreed.

Breskin & Robbins replied that the client was willing to pay only 30 percent of the bill. The firm offered to commence litigation on Copp's behalf, and eventually sued the client on its own behalf. It claimed $37,000 in litigation expenses allegedly incurred at the client's request, including amounts owing to Copp.

Subsequently, Copp filed this action against Breskin & Robbins. Breskin & Robbins admitted the amount owed,

but averred as an affirmative defense that it hired Copp as agent of a disclosed principal, the client.

## LIABILITY OF ATTORNEY TO LITIGATION SERVICES PROVIDER

Breskin & Robbins relies on dictum to the effect that an attorney, as agent of a client, is not responsible for litigation costs, such as expert witness fees, unless the attorney personally agrees with the litigation service provider to pay them. *See Christensen, O'Connor, Garrison & Havelka v. Department of Rev.,* 97 Wn.2d 764, 769–70, 649 P.2d 839 (1982). The *Christensen* dictum might be persuasive if it were not for a subsequent case which dealt with the same issue (whether reimbursements for costs advanced on behalf of a client are subject to business and occupation tax) but which disclaimed any ruling on the issue presented in this case. *See Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Rev.,* 103 Wn.2d 183, 190, 691 P.2d 559 (1984). *Walthew* held, as did *Christensen,* that reimbursements for litigation costs are exempt from B&O tax because the attorney receiving the reimbursement is not ultimately responsible for those costs. However, *Walthew* retracted the agency reasoning in *Christensen,* together with the suggestion that reimbursements might be taxable if an attorney agrees to pay them personally, holding instead that reimbursements for costs are per se exempt from B&O tax. *Walthew* relied on the Code of Professional Responsibility, now the Rules of Professional Conduct, which forbid attorneys from advancing or otherwise paying the costs of litigation unless the client remains ultimately liable for them. *Walthew,* at 188 (discussing CPR DR 5–103, now RPC 1.8(e)).

■ Washington State Bar Association, Ethics Opinion 140 (1969), states:

[W]hen the attorney has directly and personally ordered or arranged for services in circumstances under which . . . the attorney . . . did not make it clear (if such were [the] intent) to the person rendering the services that such person must look to the client alone for payment, the attorney has been derelict

> in . . . preserving a good public image of the legal profession. *The primary responsibility of making it clear that the attorney acts in an agency capacity with no personal liability rests upon the attorney.* If [the attorney] has been derelict herein, others may reasonably be misled into believing that the attorney is agreeing to pay or to guarantee the payment of the obligation so created. In this circumstance it would be the ethical obligation of the attorney to pay such indebtedness and then look to [the] client for reimbursement and assume the risk of nonpayment.

(Italics ours.) The Rules of Professional Conduct prohibit attorneys from using the ignorance of litigation service providers to their financial advantage. Attorneys may not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. RPC 8.4(c). They must prevent or correct misunderstandings when the client's legitimate interests are not jeopardized. RPC 4.1, 4.3. They must avoid means that burden third persons without justification. RPC 4.4. The rules do not "undertake to define standards for civil liability of lawyers", RPC Preliminary Statement, but that is often a necessary or logical consequence of upholding them. *See, e.g., Walthew,* at 188; *see also Allard v. First Interstate Bank of Wash.,* 112 Wn.2d 145, 149–50, 768 P.2d 998 (1989); *Tank v. State Farm Fire & Cas. Co.,* 105 Wn.2d 381, 388–89, 715 P.2d 1133 (1986).

Other jurisdictions are split as to whether an attorney is responsible to an expert or other service provider in the absence of a disclaimer. *See* Annot., *Attorney's Personal Liability for Expenses Incurred in Relation to Services for Client,* 66 A.L.R.4th 256 (1988), replacing annotation at 15 A.L.R.3d 531 (1967). Since 1955, three jurisdictions deciding the issue as a matter of first impression have reasoned that the attorney is an agent of a disclosed principal and, as such, is not liable unless the attorney expressly or impliedly agrees to be bound. *See Free v. Wilmar J. Helric Co.,* 70 Or. App. 40, 688 P.2d 117, *review denied,* 298 Or. 553, 695 P.2d 49 (1984); *Hasbrouck v. Krsul,* 168 Mont. 270, 541 P.2d 1197 (1975); *see also Soro v. Bank of Miami,* 537 So. 2d 1135 (Fla. Dist. Ct. App. 1989) (agreement to be bound). During the same period, nine jurisdictions considering the

issue anew or for the first time have held that formal agency reasoning does not accurately reflect the attorney's role as a strategist in litigation or the common understanding of litigation service providers. *See Gualtieri v. Burleson,* 84 N.C. App. 650, 353 S.E.2d 652, *review denied,* 320 N.C. 168, 358 S.E.2d 50 (1987); *Ingram v. Lupo,* 726 S.W.2d 791 (Mo. Ct. App. 1987) (rejecting earlier cases); *Gaines Reporting Serv. v. Mack,* 4 Ohio App. 3d 234, 447 N.E.2d 1317 (1982); *Theuerkauf v. Sutton,* 102 Wis. 2d 176, 306 N.W.2d 651 (1981); *Molezzo Reporters v. Patt,* 94 Nev. 540, 579 P.2d 1243 (1978); *C.C. Plumb Mixes, Inc. v. Stone,* 108 R.I. 75, 272 A.2d 152 (1971); *Roberts, Walsh & Co. v. Trugman,* 109 N.J. Super. 594, 264 A.2d 237 (1970); *Burt v. Gahan,* 351 Mass. 340, 220 N.E.2d 817, 15 A.L.R.3d 527 (1966); *see also In re Peters,* 332 N.W.2d 10, 17 (Minn. 1983) (disciplinary proceeding). The clear trend is to hold the attorney liable. One court, bound by prior cases siding with the attorney, nevertheless expressed the view that the attorney should be liable in the absence of a disclaimer, because the service provider deals with the attorney, not the client, and generally accepts employment based on the attorney's credit, not the client's. *See Rayvid v. Burgh,* 37 Misc. 2d 963, 234 N.Y.S.2d 868 (1962).

 Justification for the disclosed agency rule is the probable intention of the parties, objectively manifested. Restatement (Second) of Agency § 320, comments *a–c;* § 321, comment *a;* § 328, comment *a* (1958). When the circumstances indicate a probable intention that is contrary to the general rule, the reason for the rule is gone, and the rule should be modified to reflect this fact. Otherwise, the purpose of the rule—giving effect to the intentions of the parties—is lost. When a litigation service provider contracts with an attorney based on the attorney's credit, and the attorney is aware, or should be aware of this, it should not matter that the client's identity is known. The service provider reasonably expects that the attorney will be responsible, as surety or guarantor of the client's performance, RPC

1.8(e), and any contrary expectation of the attorney is unreasonable, if not fraudulent.

An agent may guarantee performance by the principal, and the existence of a guaranty "may be shown by proof of a custom to that effect." Restatement (Second) of Agency § 328, comment *b*. Custom is determinative of the parties' intent where both parties are aware of it, and neither knows or should know that the other party has an intention contrary to it. *See Trugman,* 264 A.2d at 239–40 (attorney liable to court reporter based on custom).

Here, Copp's testimony establishes that he relied upon a custom whereby experts look to attorneys for payment of their fees. Breskin & Robbins was aware of an identical custom locally. The statement that litigation costs were being paid and were to be paid by the client does not address the situation when the client is unwilling or unable to pay. Therefore, under the circumstances of this case, it was insufficient as a matter of law to apprise Copp of a change from customary practice.

Copp accepted employment before meeting the client, and he sent bills to Breskin & Robbins, which the firm paid. This put the firm on notice that he was relying on its credit, not the client's, making an express disclaimer of responsibility essential to avoid liability. Breskin & Robbins assured Copp that any future charges would be paid within 30 days of his testimony. This assurance, on the firm's letterhead and signed "BRESKIN & ROBBINS /s/ Howard Breskin", did not disclose the agency character in which it was allegedly made. It is completely consistent with the customary practice of a firm pledging its credit to obtain expert services.

Breskin & Robbins advanced several thousand dollars by itself and through an associated attorney. This conflicts with the firm's assertion that the client alone was paying, and alone was expected to pay, the expenses of litigation. The advancements reveal the firm's personal interest in the litigation—established by a contingency fee agreement— evidencing an intent by the firm to become a party to the

contract with Copp. *See Pessano v. Eyre,* 13 Pa. Super. 157 (1900), discussed in 66 A.L.R.4th § 13, at 289.

Breskin & Robbins offered to commence litigation against the client on Copp's behalf without any indication that there would be a charge for this service. The firm's offer reveals an understanding on its part that it was indebted to Copp. The lawsuit commenced by Breskin & Robbins on its own behalf against the client admits amounts owing to Copp as its damages. The firm would not have acted in this way if it believed it had adequately apprised Copp of an intention not to be liable for his services.

We hold that in these circumstances an attorney owes an expert or other litigation service provider an express disclaimer of responsibility if the attorney intends not to be bound by a contract for litigation services. This reflects the modern trend, which is to hold the attorney liable in the absence of an express disclaimer or other clear indication not to be bound. Putting the burden on the attorney promotes public trust and confidence in the legal profession, the supervision of which is the exclusive province and responsibility of the courts. *See Short v. Demopolis,* 103 Wn.2d 52, 62, 691 P.2d 163 (1984). Public trust in the profession and the courts would be "greatly endangered and jeopardized" by a technical defense of disclosed agency. Ethics Opinion, at 140.

The judgment is affirmed.

COLEMAN, C.J., and PEKELIS, J., concur.

Review denied at 114 Wn.2d 1026 (1990).